[Civ. No. 4050.   Fourth Dist.   June 9, 1950.]

THE NATIONAL DOLLAR STORES, LTD. (a Corporation), Respondent, v. W. B. WAGNON, SR., et al., Appellants.

Rowell & Guerard and Aubrey H. Seed for Appellants.

Eckhart A. Thompson, Frank C. Lerrigo, Gavin McNab, Schmulowitz, Sommer & Wyman, Nat Schmulowitz and Sidney F. DeGoff for Respondent.

MUSSELL, J.—Plaintiff leased to the defendants the premises in Fresno commonly known as the "old Post Office property." The lease was for five years from September 15, 1948, at a monthly rental of $1,000. It provides that defendants shall pay the taxes and carry certain insurance; that if the lessees shall default in the payment of rent, taxes, insurance premiums, or any other moneys, and such default shall continue for thirty (30) days after written notice from the landlord specifying such default, then lessor has the right, at its election, to declare the lease at an end, reenter the property and eject all parties; that within sixty (60) days after obtaining possession, tenants shall commence the erection of a one-story building substantially covering all the land not occupied by the old post office building; that if defendants shall default in the performance of any covenant other than the one involving the payment of money, and such default shall remain uncured for sixty (60) days after written notice specifying such default, then plaintiff shall have the right, at its election, to terminate the lease; that none of the covenants, terms or conditions of the lease may be waived, modified or altered, except by written agreement.

Defendants entered into possession under the terms of the lease on or about February 1, 1949, and paid the rent for February and March of that year. On or about April 21st, plaintiff addressed a letter to the defendants requesting a payment on account of the prorated taxes which had not been paid and reminded defendants of their obligation to pay insurance premiums. On or about June 6, 1949, plaintiff served defendants with a preliminary notice of default, specifying that defendants were in default in the payment of rent for April, May and June in the sum of $3,000 and taxes in the sum of $2,983.03; that they were in default in the procurance of insurance and payment of premiums thereon and in the commencement of the construction of improvements around the old post office building; and that upon the expiration of thirty (30) days after the notice, it was plaintiff's intention to terminate the lease and recover possession.

More than 30 days later and on or about July 15, 1949, plaintiff served on defendants the usual three-day notice to quit, specifying liability for rent in the sum of $4,000; taxes in the sum of $2,983.03; fire insurance premiums in the sum of $17.74; and public liability insurance premiums in the sum of $3.65. The defendants failed to pay the rent and further sums specified in the notice and this action was commenced.

Trial was had by the court with a jury and at the conclusion of the testimony, the plaintiff moved the court for a directed verdict. This motion was granted and the jury was instructed to return a verdict in favor of the plaintiff, as follows: For rent, April to July 20, 1949, in the sum of $3,666.66; for real estate taxes to June 30, 1949, in the sum of $2,983.03; for premiums on fire insurance to June 30, 1949, $17.74; and premiums on public liability insurance to June 30th in the sum of $3.65. The jury returned a verdict as instructed and added to it the following finding: "And we do hereby further find that the plaintiff, National Dollar Stores, Ltd. is not estopped to recover the whole or any part of said sum from the defendants, or either of them."

The defendants were permitted to file an amendment to the answer to conform to proof. Findings of fact and conclusions of law were signed by the court, providing, among other things, that plaintiff was entitled to restitution of the premises and a forfeiture of the lease; that plaintiff was not estopped from maintaining the action or declaring a forfeiture of the lease or from recovering the aforesaid amounts of rent, taxes and insurance premiums. Judgment was entered accordingly.

Defendants assert that the court erred in directing the jury to return a verdict for plaintiff, and while they do not contend that the conditions of the lease relative to the payment of rent, taxes and insurance were met by them, they argue that the issues raised by the special defense should have been submitted to the jury.

The evidence relied upon to establish the defense of estoppel is, briefly, as follows: That immediately after obtaining possession of the premises, the defendants sublet various portions of the building thereon and were negotiating with various other prospective subtenants and on or about February 8, 1949, they contacted certain builders and investors from Oakland, Messrs. O'Shea, Cianciarulo and Beckett. These men came to Fresno and went over the premises with the defendants. They expressed an interest in financing improvements if defendants could secure permission to wreck the old building and erect a new one. A meeting was then arranged with the board of directors of plaintiff corporation regarding that plan. The meeting took place during the latter part of March, 1949. Considerable discussion was there had by and between the parties. Plaintiff's chairman, Mr. Shoong, first

told Mr. O'Shea that there would be no modification; that the lease would have to stand as it was then written. The cost of demolishing the existing building was discussed and the plaintiff proposed that it would allow up to $15,000 on the cost thereof; that it would abate five (5) months rent during construction of a new building; that it would extend the term of the lease to twenty-five (25) years, under certain conditions, and that some concession would be made in the matter of rents. No specific amount of rent was mentioned and nothing was agreed upon as to any change of rent. These proposals and negotiations were all oral and no final agreement was ever executed embodying them.

Relying upon these incomplete negotiations, the defendants, with the knowledge of the plaintiff, commenced negotiations for financing a new building and did not pay the April rent.

About April 21st the plaintiff requested a payment of the real estate taxes and during that month demanded payment of the April rent. Defendant Wagnon, Sr., then contacted the plaintiff and proposed to give the corporation a promissory note for the rent for the months of April, May and June, 1949, and for the taxes. He offered to secure the note by assignment of defendants' interest in an apartment house. Defendant Wagnon, Sr., told Mr. Shoong that he was in the process of effecting a change in plans; that he needed to complete certain subleasing and financing; that he would be required to go to the middle west or east to complete the transaction; that it would take at least sixty (60) days to complete his negotiations; and that if plaintiff would accept this note and assignment deferring rent due up to July 1, 1949, he, defendant Wagnon, Sr., would undertake to complete the new plan. The promissory note and assignment to secure it were unsigned and were not accepted by plaintiff as payment of the rents and taxes. After Mr. Shoong examined the unsigned documents, he said to Wagnon, Sr. "I can't use this for money—Go see Sibley." Wagnon exhibited the documents to Sibley, who said "I'm not a lawyer but they look all right. I will see National Dollar this afternoon. See me tomorrow." Wagnon, Sr. testified that at his meeting with Sibley the following day, Sibley "Just smiled and said— raised his hand like that (indicating) and said, 'It is allright. Go ahead.' I then asked him if it was necessary for me to go and sign these papers; if I should not go and sign these papers? He said it was not necessary; to go ahead. He said, 'You know we are in a depression, or very close to one', or

something of the kind and that, 'It is very hard—harder now than it has been to get tenants, and you better work fast. It is getting tougher all the time.' And that was the general gist of the short conversation. Did not last over probably 3 or 4 minutes.'' (Rep. Tr. p. 76, lines 24-27; p. 77, lines 1-11; see, also, Cl. Tr. p. 32, lines 19-25.)

After these conversations with Mr. Shoong and Mr. Sibley, defendant Wagnon, Sr., believing that he had made arrangements for the satisfaction of rent demands until July 1st, began to put into effect plans for demolishing the existing building on the premises and the leasing, financing and construction of a proposed new $125,000 building. These plans were never consummated, no rent was paid and the construction of the $30,000 building, as required by the lease, was never commenced.

The trial court found the foregoing facts to be true, but concluded that plaintiff was not thereby estopped from maintaining the instant action. We are in accord with the conclusion reached by the trial judge. The evidence was insufficient as a matter of law to create an estoppel. Plaintiff made no representations to defendants that it had accepted defendants' proposals to modify the lease. The uncontradicted testimony shows that the proposed modifications had only reached the discussion stage and that plaintiff had not consented or agreed to any change in the terms of the lease. Estoppel cannot be established from such preliminary discussions and negotiations. As was said in *Toms* v. *Hellman*, 115 Cal.App. 74, at page 78 [1 P.2d 31]:

''An agreement that parties will, in the future make such contract as they may then agree upon amounts to nothing. An agreement to enter into negotiations and agree upon the terms of a contract, if they can, cannot be made the basis of a cause of action. Where a final contract fails to express some matter, as, for instance, a time of payment, the law may imply the intention of the parties; but where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon. (*Shepard* v. *Carpenter*, 54 Minn. 153 [55 N.W. 906]. See also, *Ridgeway* v. *Wharton*, 6 H.L. Cas. 263 [10 Eng.Rep. 1297].)''

It is apparent that no agreement was entered into which was certain as to its terms, with respect to the amount of rent to be charged if, as and when the new building was completed,

the type of building to be erected or the conditions of a new lease. Certainty is essential to all estoppels. (*Orange Cove Water Co.* v. *Sampson,* 78 Cal.App. 334, 347 [248 P. 526].)

If, as is contended by defendants, the conduct of plaintiff constituted a deferment of the April, May and June rents, such deferment was only until July 1st and there was ample time after the notice of default to permit defendants to pay the amounts due. Defendants made no effort to comply with the terms of the lease after the notice of default, relying upon an alleged oral agreement to excuse their nonperformance. The oral agreement was insufficient to vary the terms of the lease, which provided that none of its terms could be waived, modified or altered except by a written instrument. (*Harloe* v. *Lambie,* 132 Cal. 133, 136 [64 P. 88].) The mere oral promise to defer payment of the April, May and June rents, if made, is not sufficient to create an estoppel under the circumstances here shown. (*Rottman* v. *Hevener,* 54 Cal.App. 474, 480, 481 [202 P. 329]; *Thomson* v. *Langton,* 45 Cal.App. 415, 417 [187 P. 970].) Moreover, defendants did not change their position in reliance upon the alleged oral deferment, but merely continued their efforts to complete negotiations with plaintiff for a modification of the lease and to work out some definite plan which they could present to plaintiff's board of directors for approval. Such continued effort on their part was for their own benefit and neither at plaintiff's request nor for plaintiff's benefit. While the doctrine of estoppel has been applied with respect to representations of a party to prevent their operating as a fraud upon one who has been led to rely upon them, where, as here, defendants had it in their power to guard against a forfeiture of the lease at all times, the doctrine is not applicable. (*Lindemann* v. *Coryell,* 59 Cal.App. 788, 792, 793 [212 P. 47]; *Hosner* v. *Skelly,* 72 Cal. App.2d 457, 463 [164 P.2d 573].)

The record is uncontradicted that at no time did defendants offer to pay the rent for the months of April, May or June or to pay the so-called unexecuted "promissory note." The mere nonpayment of the rent and taxes could not have been prejudicial as defendants had the right and could have paid the rent at any time on or prior to July 18, 1949, when the three-day notice to pay rent, taxes and insurance expired. As was said in *Kindig* v. *Palos Verdes Homes Assn.,* 33 Cal.App. 2d 349, 354 [91 P.2d 645]:

"One of the essential elements of estoppel, that the party relying thereon has been prejudiced as a result of another

party's acts, is not present in this case, and, therefore this doctrine has no application.''

The doctrine of *estoppel in pais,* upon which defendants rely, is an equitable one. (*Smith* v. *Anglo-California Trust Co.,* 205 Cal. 496, 504 [271 P. 898] ; *American National Bank* v. *A. G. Sommerville, Inc.,* 191 Cal. 364, 373 [216 P. 376].) Defendants were required to comply with the express terms of their agreement and to pay or tender payment of the rent and taxes, particularly after having been served with the notice of default. Their failure to do so renders their claim of equitable estoppel untenable. (*Connecticut Mut. L. Ins. Co.* v. *Most,* 39 Cal.App.2d 634, 642 [103 P.2d 1013].)

As was said in *Toms* v. *Hellman,* 115 Cal.App. 74, 84 [1 P.2d 31] :

''Estoppels must be mutual; and since the contract was unenforceable against appellants because of its uncertainty and its contemplation of a subsequent contract, as pointed out above, and could have been repudiated by them, they cannot urge that respondents were estopped because of their attempted compliance with its terms.''

In the case before us the ''note and assignment'' were never executed by the defendants, or either of them, and did not bind them. Their offer to sign the note and assignment could have been repudiated by them at any time.

Another element of estoppel is lacking in this case, namely : any false statement or concealment by plaintiff. The absence of this element is fatal to defendants' contentions. (*City of San Diego* v. *Cuyamaca Water Co.,* 209 Cal. 105, 149 [287 P. 475].)

Defendants claim that they relied upon plaintiff's alleged representations that it had accepted the ''note and assignment'' as security for an additional sixty days deferment. The record shows that the three-day notice to surrender the premises and election to terminate the lease was not signed by plaintiff until July 7, 1949, nor served until July 15th. Suit thereon was not commenced until July 21st. Actually, therefore, the defendants received more time to pay the rent and taxes than they now claim they were misled into believing that they did receive. In this connection, defendant Wagnon, Sr. testified that he intended the note and assignment to take the place of money but that they were not intended to modify any of the terms of the lease. This testimony clearly indicates that the defendants did not intend the note

and assignment to modify any of the terms of the lease or change any of the plaintiff's remedies. The conversation had by the defendants with Mr. Sibley, in which Sibley said "It is allright, go ahead," indicates to us that no modification of the existing lease was agreed to. We conclude that the defendants failed to establish the defense of equitable estoppel.

The defendants find no fault with the findings of fact signed by the trial court upon the pleadings, including the amendment to the answer made to conform to the proof, but contend that the court found as true facts sufficient to constitute an estoppel in pais. The question was then, under the circumstances, one of law for the court. The jury, by its amendment to the verdict, found that the plaintiff was not estopped to recover the rents, insurance and taxes. This was a finding by it as to the defense of equitable estoppel.

■ It is claimed that the notice to quit the premises, dated July 7, 1949, was fatally defective in that it did not demand any specific sum to be paid to the landlord, on account of either fire or public liability premiums paid by the landlord for the tenants' account, and that there was no demand served specifying the exact sums due. The notice, however, demanded $4,000 on account of rent, specified the amount of prorated taxes, and stated the amount due on account of fire insurance and public liability insurance.

The lease expressly declares that the rent shall be $12,000 per year, payable in 12 monthly installments of $1,000 and it is not denied that the rent due, owing and unpaid amounted to $4,000.

Paragraph 24 of the lease requires the landlord to give the tenant written notice, "specifying such default" and if the default continues for 30 days thereafter, then the landlord has a right to terminate the lease. Plaintiff gave the preliminary notice, which specified the nonpayment of insurance premiums, by specifically directing defendants' attention to the provisions of the lease, paragraphs 7 and 16, relating to the payment of insurance, to which reference was therein made. The full amount of the insurance premiums was set forth in the three-day notice and the defendants were given an additional time to comply therewith. We conclude, therefore, that the notice was sufficient.

■ An application was made by the plaintiff for leave to produce additional evidence in connection with the unsigned promissory note and assignment, alleged by defendants to have been given as security for the payment of the April, May and

June rent. Inasmuch as the documents were unsigned and were not accepted, the evidence sought to be introduced is immaterial and the application is denied.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.