[Civ. No. 16364.   First Dist., Div. One.   Jan. 20, 1956.]

PEYTON S. GRADDON et al., Plaintiffs and Appellants, v. RALPH C. KNIGHT et al., Defendants; THE ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO et al., Interveners and Appellants.

Henry C. Clausen, John H. Machado and Richard G. Burns for Plaintiffs and Appellants.

Frederick M. Fisk, Chickering & Gregory, Nathan C. Finch, Howe & Finch, John P. Macmeeken and Charles E. Luckhardt for Interveners and Appellants.

BRAY, J.—Cross-complainants (and plaintiffs) Graddon appeal from a judgment of nonsuit in favor of cross-defendant bank on their third cause of cross-complaint. The bank appeals (1) as cross-defendant from a judgment for $13,639.79 in favor of cross-complainants Graddon on their second cause of cross-complaint, and (2) as cross-complainant from a judgment in favor of cross-defendants Graddon on the bank's cross-complaint against them.

### QUESTIONS PRESENTED

A. BANK'S APPEALS.

1. Was the admission of evidence of the oral agreement upon which the estoppel cause of action is based an attempt to

vary the terms of the deed of trust and hence a violation of the parol evidence rule?

2. Does the evidence support the judgments?

(a) Estoppel.

(b) Authority of bank's officer.

3. Damages.

4. Failure of jury to offset indebtedness to bank.

5. Interest.

6. Bank's cross-complaint.

B. PLAINTIFFS' APPEAL (now moot).

RECORD

This action grew out of a fire which destroyed a residence being built for Graddons by defendant Knight upon which the bank had granted a so-called G.I. loan. Graddons sued Knight for alleged negligence in the starting of the fire. Then followed a maze of cross-complaints, answers and other pleadings.* After a trial certain judgments were rendered and appeals taken therefrom. These appeals were determined in *Graddon* v. *Knight*, 99 Cal.App.2d 700 [222 P.2d 329]. All judgments were thereby affirmed save a judgment in favor of Graddons on their cross-complaint against the bank. That judgment, based on a jury verdict, had granted Graddons certain damages on the theory that under the terms of the deed of trust executed to the bank by Graddons and oral evidence permitted to explain an alleged ambiguity in said deed of trust, the bank was obligated to procure fire insurance on the property and had failed to do so. Holding that there was no ambiguity in the deed of trust and hence oral evidence was not admissible to explain the document, the appellate court reversed that judgment, stating "The parties should be allowed to amend their pleadings if they see fit in the light of this opinion." (P. 706.) Thereafter Graddons with permission of the trial court amended their cross-complaint against the bank setting up two additional causes of cross-complaint: (1) alleging an estoppel against the bank claiming that it had not agreed to procure insurance on the property; (2) alleging negligence in the failure of the bank to procure said fire insurance. On these two causes of cross-complaint and on the issue raised by a cross-complaint of the bank charging that under the terms of the deed of trust Graddons

---

*For a detailed statement of the pleadings and the original issues between all the parties see *Graddon* v. *Knight*, 99 Cal.App.2d 700 [222 P.2d 329].

had agreed to procure fire insurance on the property and had failed so to do, the cause was retried. The trial court granted a nonsuit on Graddons' third cause of cross-complaint (negligence). Graddons appeal. The jury found for Graddons and against the bank in the sum of $13,639.79 on Graddons' second cause of cross-complaint, and found in favor of Graddons and against the bank on its cross-complaint. From the judgments entered thereon the bank appeals.

A. BANK'S APPEALS.

1. *Oral Agreement.*

█ As stated in the bank's opening brief, the "pivotal issue presented . . . is that of upon whom the duty to insure the Graddons' home . . . reposed." The bank contends that as the opinion in the first appeal (*Graddon* v. *Knight, supra*) held (and such holding is the law of the case) that the deed of trust was a fully integrated, unambiguous and certain written agreement requiring Graddons to procure and maintain fire insurance, and that parol evidence could not be admitted to vary its terms, the court could not admit oral evidence to support the estoppel charge pleaded in the second cause of action in the amended cross-complaint.* The bank cites many cases concerning "integrated" written agreements, and the fact that such are not subject to variance by parol evidence. There can be no question about that principle of law nor that the law of the case here is that the deed of trust is such an "integrated" instrument. But the admissibility of parol evidence here was not to vary the terms of the deed of trust, but to show a contemporaneous oral agreement to the effect that while plaintiffs obligated themselves under the written agreement to procure and maintain fire insurance, the parties agreed that the physical act of obtaining the insurance which plaintiffs were obligated to furnish was to be done by the bank. In other words the bank agreed to act as Graddons' agent to obtain the insurance. There is nothing in such agreement that in any way varies the terms of, or is contradictory to, the written instrument. Almost the

---

*The bank also characterizes this cause of action as having "flagrant deficiencies." However, it alleged (1) that the bank on June 27, 1946, represented and promised that it would procure and maintain "adequate fire insurance" on the Graddons' home, shop and carport; (2) that the bank knew or should have known that the Graddons would rely upon those alleged representations and promises; (3) that they did so rely and that they would have secured insurance had they known that the bank would fail to do so; (4) that the bank did not procure insurance; and (5) that in consequence the Graddons had been damaged.

identical situation as here appears in *Painter* v. *Twinsburg Banking Co.* (1949), 84 Ohio App. 418 [87 N.E.2d 502]. There the bank made a loan secured by a mortgage on certain property, the building on which later burned. The mortgage contained provisions similar to those in the deed of trust here obligating the mortgagor to procure fire insurance, the policies to be approved by the bank, the bank having the right to procure the insurance if the mortgagor failed to do so. In the action brought by the mortgagor against the bank for failure to obtain the insurance, based upon a contemporaneous oral agreement of the bank to obtain the insurance, the same contention was made as here, namely, that evidence of such oral agreement was inadmissible as being violative of the parol evidence rule. After stating that under the provisions of the mortgage it was the duty of the mortgagor to procure the insurance, the court stated (pp. 503-504): "There was, however, no obligation of the mortgagor to personally secure the insurance. She could contract with another to care for this business detail. . . . Such verbal agreement, in which the mortgagor employs the mortgagee as her agent, is not contradictory to or in derogation of the written agreement in the mortgage. . . . [T]here is sufficient consideration for the promise to insure if the execution and delivery of the mortgage, the agreement to procure insurance, the disbursement of the money loaned, and the recording of the deed and mortgage, is one continuous business transaction. If it is, then the giving of the note and the mortgage, and the borrowing of the money with promise to pay interest, presents sufficient consideration to support a contract with a mortgagee which makes such mortgagee the agent of the mortgagor to procure the fire insurance." (See also *Sheller* v. *Seattle Title Trust Co.* (1922), 120 Wash. 140 [206 P. 847], and *Bates* v. *Northern Bond & Mortgage Co.* (1924), 129 Wash. 343 [225 P. 52].) These cases apply the well known rule set forth in *Buckner* v. *A. Leon & Co.*, 204 Cal. 225, 227 [267 P. 693]: "It has long been the rule that when parties have not incorporated into an instrument all of the terms of their contract evidence is admissible to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms . . ." (See also *Gardiner* v. *Burket,* 3 Cal.App.2d 666, 669 [40 P.2d 279], and *Dobbins* v. *Horsfall,* 58 Cal.App.2d 23, 29 [136 P.2d 35].)

## 2. *Evidence.* (a) *Estoppel.*

■ The evidence amply supports the jury's implied finding that the bank agreed to procure the insurance, or, at the very least, by its conduct led Graddons to believe that it had done so, and is estopped to deny such agreement. Coppock was a vice-president and the manager of the bank's Palo Alto branch and was the person with whom Graddons dealt in obtaining the loan on their property and in the execution of the necessary documents. Coppock instructed them about getting appraisers and then stated: " '. . . We have to start a file for our own system here, we have to see the plans and get them approved and they have to be approved by the G.I. in San Francisco, and when all those are in and complete, then we can go over this loan . . .' " Coppock also stated that the bank would do the checking of all necessary papers. Graddons were required to sign a letter instructing the bank to pay "any and all expenses in connection with the completion of this loan . . ." The bank purchased the title insurance and charged it to Graddons. Coppock stated at the close of the signing of the papers, " 'Well, that takes care of everything,' " and then: "When we had finished signing the papers and had gotten up to leave, Mr. Coppock was looking over the papers and he looked up to us and says, 'Do you want the full amount of the insurance?' and I said, 'Yes.' And he says, '$12,000?' And I said, 'Yes.' " It should be noted that Coppock denied these statements. Graddons relied upon this apparent agreement of the bank to do the actual obtaining of the insurance and made no effort to get it themselves. That Coppock intended to convey to Graddons that he would procure the insurance is additionally shown by the fact that the day after the fire he told the architect "he thought the bank held the fire insurance papers." Coppock testified that he was "dumfounded" to find no policy in the file, that "just an exception should have gotten by us." However, the jury chose to believe plaintiffs' evidence. The foregoing evidence brings this case well within the rule set forth in section 90, Restatement of Contracts: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise;" and in section 1962, subdivision 3, Code of Civil Procedure: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliber-

ately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it; . . ."

The evidence here was such that the jury could and did find all the elements necessary for the doctrine of promissory estoppel to apply, namely, (1) a promise clear and unambiguous in its terms (*National Dollar Stores, Ltd.* v. *Wagnon*, 97 Cal.App.2d 915 [219 P.2d 49]); (2) reliance by the party to whom the promise is made (*Estate of Jackson*, 112 Cal. App.2d 16 [245 P.2d 684]); (3) his reliance must be both reasonable and foreseeable (*Pacific Finance Corp.* v. *Hendley*, 119 Cal.App. 697 [7 P.2d 391]; Rest. Contracts, § 90); (4) the party asserting the estoppel must be injured by his reliance (*National Dollar Stores, Ltd.* v. *Wagnon, supra*).

(b) *Authority.*

There can be but little, if any, question that the bank held out its vice-president and manager of its branch bank as having the authority to agree to get the insurance for Graddons. ■ It is a matter of common knowledge that branch bank managers handle all the details of loans of this type, including the obtaining of title insurance as well as fire insurance. If the bank is permitted to repudiate its branch manager's actions of this type, dealing with a bank would become a most hazardous matter. "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317.) See *Safeway Stores, Inc.* v. *King Lbr. Co.*, 45 Cal.App.2d 17 [113 P.2d 483], where the court said concerning a branch manager of a lumber corporation (p. 23): "Where, as here, an agent is by his principal put in charge of a business as the apparent manager thereof, he is clothed with apparent authority to do all things that are essential to the ordinary conduct of such business at that place, and third persons acting in good faith and without notice of, or any reason to suspect, any limitations of his authority, are entitled to rely on such appearance."

(3) *Damages.*

The jury awarded $13,639.79. Just how it arrived at this figure is difficult to say. The court instructed on the measure of damages to the effect that although the total amount of insurance to be procured by the bank was $12,000, Graddons

could only recover the amount which would have been payable to them upon the fire loss, and that from such sum should be deducted $7,188.60, the amount due from Graddons to the bank on the loan. The amount payable under the policy would be the cost of restoring the property to its condition before the fire. (This is the measure stated in section 2051, Insurance Code.) The architect who testified to the damage stated that the materials destroyed were of the reasonable value of $10,000. He also stated that the value of "the salvage still remaining and usable on the property was some $3500;" that his figure of $10,000 was exclusive of this salvage figure. He also testified it would take $6,500 for labor to complete the house, including free labor to be donated as a favor to plaintiffs.

Plaintiffs claim that either both the $10,000 and the $3,500, or all three figures should be added together, making a total replacement value of either $13,500 or $20,000. Both of these figures are in excess of the judgment if interest was included. It is difficult to understand how the $3,500 representing salvage could be recovered under an insurance policy, had one been issued, as such figure does not represent a loss. It would appear, too, from the architect's testimony that the figure of $6,500 for labor was included in the $10,000 estimated loss, although in one place the architect referred to the $10,000 as the value of the materials lost. It must be remembered that the value of the building when completed would have been only $13,500, and the original contract price was "not to exceed $11,999.81." (It was 90 per cent completed at the time of the fire.) The architect was the only witness who discussed damages. His testimony is most confusing. However, as the question of damages has to be retried, as hereafter set forth, it is not necessary to attempt to determine the effect of his testimony.

(4) *Offset.*

The court instructed that the jury should reduce the amount it should find due plaintiffs from the bank by the sum of $7,188.60, being the amount paid by the bank to the contractor and secured by the deed of trust. The evidence showed that prior to trial the bank had foreclosed the deed of trust and sold the property for $4,000, and that the actual amount then due to the bank from plaintiffs on said loan was $4,482.73. Apparently the court in its instructions mentioned the wrong amount. However, it is obvious that the jury made no deduc-

tion for any amount due the bank. Therefore the matter of damages will have to be retried. Undoubtedly, on the retrial of the damage issue, the trial court will determine the present situation concerning said indebtedness and the effect of the foreclosure.

### 5. *Interest.*

The court instructed that interest from December 13, 1946, the date of the fire, at 7 per cent per annum should be allowed. This instruction was incorrect. ■ Until a determination was made as to the amount of damage caused by the fire and which would have been recoverable under the contemplated fire insurance policy, the indebtedness from the bank to plaintiffs was unliquidated. Interest, therefore, could not commence until judgment. (See *Axell* v. *Axell,* 114 Cal.App.2d 248 [250 P.2d 182] ; *Albertsworth* v. *Glens Falls Indem. Co.,* 84 Cal.App.2d 816 [192 P.2d 66].) Apparently the judgment allowed interest from the date of the fire on some amount. This probably accounts for the odd figures in the judgment. For this reason, also, the issue of damages will have to be retried.

### (6) *Bank's Cross-complaint.*

This cause of action is based upon the bank's contention that by the terms of the deed of trust Graddons were obligated to procure the fire insurance, and having failed to do so the bank is entitled to reimbursement for all moneys loaned Graddons. Inasmuch as the jury found that the physical obtaining of the insurance was the bank's duty, the jury properly found against the bank on the latter's cross-complaint.

### B. Plaintiffs' Appeal.

■ Because we have sustained the judgment as to defendant's liability under the second cause of action in Graddon's cross-complaint, the appeal from the judgment on the order granting a nonsuit in favor of the bank on the third cause of action in Graddons' cross-complaint has become moot. The appeal therefrom is dismissed.

The judgment insofar as it imposes liability in favor of Graddons under the second cause of action in their cross-complaint and the judgment in Graddons' favor on the bank's cross-complaint are affirmed. The judgment as to the amount of damages is reversed and the cause is remanded with instruc-

tions to the trial court to retry solely the issue as to damages. The interests of justice require that plaintiffs recover costs. (See Rule 26(a), Rules on Appeal.)

Peters, P. J., and Wood (Fred B.), J., concurred.

The petition of intervener and appellant Anglo California National Bank for a hearing by the Supreme Court was denied March 14, 1956.