**RENNIE & LAUGHLIN, Inc., a Corporation, Appellant,**

v.

**CHRYSLER CORPORATION, a Corporation, Appellee.**

No. 15210.

United States Court of Appeals
Ninth Circuit.

March 8, 1957.

Charles P. Gould, Spray, Gould & Bowers, Los Angeles, Cal., for appellant.

McCutchen, Black, Harnagel & Greene, G. William Shea, and Jack T. Swafford, Los Angeles, Cal., for appellee.

Before FEE, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

Plaintiff appeals from an Order of the United States District Court for the Southern District of California, Central Division, dismissing its amended complaint and cause of action, for failure to state a claim upon which relief can be granted. Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A.

The sole question presented by this appeal is whether the amended complaint, assuming all well-pleaded facts to be true and indulging in all inferences which reasonably may be drawn therefrom,[1] sets forth facts sufficient to state a legal claim.

The original complaint purported to allege a cause of action based on breach of contract and was filed on August 8, 1955. Thereafter, an amended complaint, reasserting fundamentally the same claim, was filed on April 5, 1956. It is this latter and superseding pleading which is now before this Court.

We first consider the amended complaint. It appears therefrom that the plaintiff and the De Soto Division of the defendant corporation entered into a written agreement in December 1949, whereby plaintiff became an authorized and direct dealer for De Soto and Plymouth motor vehicles, with the non-exclusive right to purchase said vehicles for resale, in the Los Angeles, California area.[2] The contract provided *inter alia* that it "shall terminate immediately by its own force without notice from either party in the event of (1) an attempted assignment of this agreement without De Soto's written consent." In September of 1951, following economic setbacks and a heart attack suffered by plaintiff's president and general manager, plaintiff advised defendant of its desire to sell its business. This information was conveyed to A. H. Langridge, defendant's Regional Manager. He, in turn, told plaintiff that the defendant corporation would procure a buyer for plaintiff's business "acceptable" to defendant. Subsequently, on or about October 1, 1951, negotiations for the sale of plaintiff's business were commenced with one Darwin C. McCredie and one George Peck, these prospective purchasers having been referred to plaintiff by Mr. Langridge. These negotiations culminated, according to the amended complaint, "in a final sale being made of Plaintiff's business to said prospective buyers on October 26, 1951," although "it was further agreed, on said date, that the formal contract of sale would be made on the 27th day of October, 1951, and the purchase price paid at that time." Prior to the execution of the written agreement of purchase, the defendant, through Mr.

1. Karseal Corp. v. Richfield Oil Corp., 9 Cir., 221 F.2d 358.

2. Exhibit A. It was incorporated by reference in the amended complaint. Rule 10(c), Federal Rules of Civil Procedure, 28 U.S.C.A.

Langridge, advised the buyers that it would not give its written consent to the sale. Thereupon, McCredie and Peck "refused" to consummate the sale. As a consequence of defendant's refusal to approve the sale transaction, a new contract with defendant was executed on February 20th, 1952, by which plaintiff continued to represent defendant, and plaintiff entered into a management contract with McCredie and Peck by which the latter operated the auto agency. Continued financial losses finally forced plaintiff to terminate its franchise agreement and close down its business operations on March 31, 1954.

Plaintiff sought recovery in its amended complaint for the following damages sustained as a result of defendant's alleged breach of contract: $77,921.69, being the agreed price for the sale of plaintiff's business to McCredie and Peck; $102,686.64, being the losses incurred between October 27, 1951 and March 31, 1954; and $300,000.00, for injury to its reputation as an automobile dealer.

[2] The amended complaint purports to ground plaintiff's action on the doctrine of waiver. It avers, "That having consented to the aforesaid sale to said purchasers, Defendant's subsequent revocation of said consent constituted a breach of said sales contract * * *" If in fact that were the only basis upon which plaintiff could conceivably proceed further discussion would be unnecessary, for it is settled that waiver can be employed only for defensive purposes.[3] It can preclude the assertion of legal rights but it cannot be used to impose legal duties. The shield cannot serve as a sword.

However, giving the facts alleged in the complaint their most liberal import and disregarding the semantic deficiencies, there does appear one possible theory for an action, which is not totally devoid of merit, and requires discussion.

In substance, the theory is this. The 1949 agreement created rights and duties in both parties. Since, in the absence of an express and clear provision to the contrary, contract rights are generally assignable,[4] it follows that an implied term of the agreement was that plaintiff could assign its rights thereunder and defendant was obligated to perform to the assignee. But a limitation on the right to assign had been included in the contract: the provision that the written consent of the defendant first be obtained. This protective condition, like other defenses, was waivable.[5] Defendant, by reason of the conduct of its agent, Mr. Langridge, in securing and orally approving the prospective buyers, may have waived its right to require written consent. Accordingly, if the restrictive condition was waived, defendant was under a duty to render performance to the assignee, and its refusal to recognize this duty constituted a breach of contract.

Do the alleged facts sustain such a claim? It is of importance to a thorough understanding of the problem and its resolution that the unique context in which this issue is posed be fully perceived. We are not dealing with the usual situation in which this question arises, where the assignee after the assignment has been completed sues the obligor for failure to perform. There the obligor sets up the defense of lack of written consent. The reply is that written consent was waived. In the instant case no assignment came into being, or was effectuated, or if one were made, it was vitiated, and this is an action between the contracting parties. The considerations which govern the determination of the ordinary type of assignments case do not necessarily apply to the case at bar.

The gravamen of plaintiff's grievance is the effect defendant's conduct had on plaintiff's contractual relations with Mc-

3. Conner v. Union Automobile Ins. Co., 122 Cal.App. 105, 9 P.2d 863, 92 C.J.S. Waiver, p. 1068.

4. Corbin on Contracts, Vol. 4, Assignments § 873.

5. Bastanchury v. Times-Mirror Co., 68 Cal. App.2d 217, 156 P.2d 488; Michaels v. Pacific Soft Water Laundry, 104 Cal. App. 349, 286 P. 165, 1071.

Credie and Peck. What then was the status of these relations at the time defendant informed plaintiff that it would not consent to the sale?

Two different interpretations of the amended complaint are possible. The first is that the oral agreement between plaintiff and McCredie and Peck represented the final and fixed expression of the mutual assent of those parties to all material terms of the contract; the parties contemplating that the "formal contract" would be only a written memorial of their prior binding agreement.[6] The second construction would be that plaintiff and the prospective buyers did not intend that a binding contract should arise until the terms of the agreement had been reduced to writing.[7] It plainly appears that the former meaning is the one given the contractual relationship by the plaintiff, especially in light of the averment that the oral agreement was a "final sale" and only the "formal contract" remained to be executed. [¶X, Amended Complaint, Tr. 63] If we have properly construed the allegations, what then were the positions of the parties when defendant balked at giving written consent? By hypothesis, a valid and binding agreement was executed by plaintiff and the prospective buyers on October 26, 1951. Legal rights and correlative duties were created in each party. The amended complaint is not clear as to what transpired thereafter. It states simply that the buyers, McCredie and Peck, "refused to complete the said sale." Thus, it is not certain whether this particular refusal was a unilateral act of the buyers, in which event it would constitute an anticipatory breach of contract, or whether the plaintiff and the buyers mutually agreed to rescind the agreement. If the former be true, plaintiff's recourse lay not against defendant, but against the buyers who repudiated their contract. On the other hand, if there was a mutual rescission, plaintiff is placed in the untenable position of arguing that it should recover damages for losses which it alone occasioned. The alleged injuries would be due to plaintiff's voluntary relinquishment of its contractual rights against the buyers and not to any action on the part of the defendant. Plaintiff could not be permitted to shift the responsibility for its alleged injuries—a responsibility which it alone must bear—to the defendant.

While it seems clear that plaintiff viewed its oral agreement with the buyers as binding, whether it was or was not binding before the execution of the written document is a question of fact.[8] Therefore, we would be reticent to affirm the dismissal of the action if, despite the wording of the complaint, another construction of the agreement between plaintiff and the buyers would furnish a basis for a claim. But regardless of the interpretation given that agreement the plaintiff cannot prevail.

Assuming for the moment—and it is a tenuous assumption—that the oral agreement can legitimately be characterized as preliminary negotiation, plaintiff must then make a sufficient showing of waiver. Where substantive rights are involved, it is said frequently that waiver must be supported by either an agreed consideration or by acts amounting to an estoppel. Peal v. Gulf Red Cedar Co. of California, 15 Cal.App.2d 196, 59 P.2d 183, 184; Pacific States Corp. v. Hall, 9 Cir., 166 F.2d 668. It is undisputed that defendant received no consideration to waive its right, explicit in the contract, to require that its consent to an assignment be made in writing.

Only estoppel remains. It should be noted initially that plaintiff does not specifically and explicitly aver consent on defendant's part but alleges instead that

---

6. Restatement of Contracts, § 26; Power Service Corp. v. Joslin, 9 Cir., 175 F.2d 698; Brown v. Jerome, 9 Cir., 298 F. 1; Gavina v. Smith, 25 Cal.2d 501, 154 P.2d 681. Columbia Pictures Corp. v. De Toth, 87 Cal.App.2d 620, 197 P.2d 580.

7. Bravo v. Sharkey, 97 Cal.App.2d 883, 218 P.2d 785; Dexter v. Ankiewicz, 26 Cal. App.2d 326, 79 P.2d 400.

8. Columbia Pictures Corp. v. De Toth, supra.

Mr. Langridge advised it that a buyer "acceptable" to defendant would be secured and that the prospective buyers were referred to plaintiff by Langridge. But granting that a promise of consent could reasonably be implied from Langridge's conduct, do the facts warrant the application of the doctrine of promissory estoppel?

That doctrine is set forth in § 90 of the Restatement of Contracts:

"A promise which the promisor should reasonably expect to induce *action or forbearance of a definite and substantial character* on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

■ The doctrine has been adopted in California.[9] Obviously plaintiff's actions prior to the making of the defendant's promise cannot call the doctrine into play, for the essential element of reliance is lacking. Accordingly, plaintiff's reference to the illness of its president and its economic condition before September of 1951 is totally irrelevant to this issue. Was there then any subsequent conduct upon which plaintiff can rely?

In assuming that the discussions with the prospective buyers had not yet reached the point of a binding contractual agreement when defendant manifested its intention to withhold written consent, we have perforce a situation in which neither party was legally obligated in any manner to the other. They had engaged merely in preliminary negotiations and discourse. "Estoppel cannot be established from such preliminary discussions and negotiations." National Dollar Stores v. Wagnon, 97 Cal.App. 2d 915, 219 P.2d 49, 52. Moreover, plaintiff expended little effort and incurred slight detriment, if any, in procuring the prospective buyers, for it was defendant's own employee who produced the buyers. There are no circumstances showing that plaintiff sustained a substantial detriment or materially altered its position before defendant notified it that defendant intended to insist on its contract right. The most plaintiff was deprived of—under the hypothetical assumption—was a mere expectancy. There was no conduct on plaintiff's part that rose to the dignity of action of a "definite and substantial character." [10]

■ The basis for the holding in the instant matter obviates the necessity of deciding two additional points raised by this appeal.

The first is whether part of the consideration for the 1952 contract between plaintiff and defendant was the surrender by plaintiff of any rights it claimed arising out of the alleged breach in 1951 of the 1949 agreement. The question tendered thereby is one of fact which could not be resolved by a motion to dismiss. The second point is whether Langridge had authority, actual or apparent, to consent to the proposed sale. The 1949 agreement provides that:

"No representative of either party except as herein explicitly provided has any authority to waive any of the provisions of this agreement or to modify or change any of its terms * * *" [Para. 12 of Exhibit A]

The agreement does not state "explicitly" or otherwise that either Langridge or a regional manager had authority to waive, modify or change the requirement of written consent to an assignment by plaintiff of its rights under the agreement. However, this again poses a question of fact (the nature and extent of Langridge's authority), and thus is unsuited for determination on a motion to dismiss.

Under all the circumstances, we must affirm the judgment below.

■■ We would be remiss if we did not take this appropriate opportunity to

9. Edmonds v. Los Angeles County, 40 Cal. 2d 642, 255 P.2d 772, 779; Hunter v. Sparling, 87 Cal.App.2d 711, 197 P.2d 807; West v. Hunt Foods, Inc., 101 Cal. App.2d 597, 225 P.2d 978.

10. Restatement of Contracts, § 90, supra.

allude to and reaffirm this Court's general views on the granting of a motion to dismiss. As stated in Gruen Watch Co. v. Artists Alliance, 9 Cir., 191 F.2d 700, 705,

"On occasion motions to dismiss supply a useful technique for the prompt disposition of suits, and the Federal Rules of Civil Procedure which permit judgment on the pleadings are useful indeed. But it must be borne in mind that in many a suit such a motion cannot take the place of submission of evidence and of findings of fact and conclusions of law."

Nor is a motion to dismiss the only effective procedural implement for the expeditious handling of legal controversies. Pretrial conference; the discovery procedures; and motions for a more definite statement, judgment on the pleadings and summary judgment, all provide useful tools for the sifting of allegations and the determination of the legal sufficiency of an asserted claim.[11] The salvaged minutes that may accrue from circumventing these procedures can turn to wasted hours if the appellate court feels constrained to reverse the dismissal of an action. That is one of the reasons why a motion to dismiss is viewed with disfavor in the federal courts.[12] Another is the basic precept that the primary objective of the law is to obtain a determination of the merits of any claim; and that a case should be tried on the proofs rather than the pleadings. DeLoach v. Crowley's, Inc., 5 Cir., 128 F.2d 378, 380. This is not to say or imply that a motion to dismiss should never be granted. It is obvious that there are cases which justify and indeed compel the granting of such motion. The line between the totally unmeritorious claims and the others cannot be drawn by scientific instruments but must be carved out

case by case by the sound judgment of trial judges. That judgment should be exercised cautiously on such a motion.

Judgment of dismissal of amended complaint and action is affirmed.

11. Leimer v. State Mut. Life Assur. Co. of Worcester, Mass., 8 Cir., 108 F.2d 302.

12. Cyclopedia of Federal Procedure, 3rd Ed., Section 15.206.