Filed 12/3/15  Goldstein v. Comerica Bank CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GERALD GOLDSTEIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COMERICA BANK,<br><br>    Defendant and Respondent. | B257156<br><br>(Los Angeles County<br>Super. Ct. No. SC119154) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Gerald Rosenburg, Judge.  Affirmed.

Brown Rudnick, Ronald Rus, Randall A. Smith, and Arjun Sivakumar, for Plaintiff and Appellant.

Frandzel Robins Bloom & Csato, Thomas M. Robins III and Hal D. Goldflam, for Defendant and Respondent.

\*     \*     \*

Defendant Comerica Bank (Comerica) foreclosed on a Malibu residence after plaintiff Gerald Goldstein (plaintiff) defaulted on a $8.1 million commercial loan. Plaintiff sued Comerica for, among other things, promissory estoppel. He alleged that Comerica promised to postpone the foreclosure sale for at least 30 days but then reneged on that promise, thereby depriving plaintiff of the opportunity to cure his default. The trial court granted summary judgment for Comerica after concluding that the undisputed evidence showed no clear and unequivocal promise to postpone the sale. Plaintiff appeals that decision and the evidentiary rulings that preceded it. We determine there was no error and affirm.

### FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

In 2007, plaintiff borrowed $8.1 million from Comerica secured by a deed of trust in a residence he owned in Malibu. Over the next several years, plaintiff "chronically defaulted" on that loan. Indeed, he avoided foreclosure in 2011 only because his financial planner, Harvey Bookstein (Bookstein), paid the $1.448 million in arrearages on the loan in exchange for a subordinate lien on the property. In that transaction, Bookstein dealt with Irene Romero (Romero), a Comerica consultant Bookstein had known for decades.

Plaintiff soon fell behind on the loan again. Comerica informed him he owed $734,546.98, and set the foreclosure sale for June 7, 2012. On June 1, 2012, Bookstein contacted Romero on plaintiff's behalf, and the two spoke briefly by telephone. During the call, Bookstein proposed that he might again pay the arrearages on the loan, and they also discussed that whether Comerica might finance Bookstein's assumption of its loan. Romero told him that she would pass along the assumption proposal to the Comerica employees in a position to consider it, and made no promises as to whether the foreclosure sale would be postponed. According to Bookstein's deposition testimony, Romero told him that "she would continue the foreclosure [sale] until [they] worked out [their] deal" and that "she was going to speak to other people but was sure she could get the four- or five-week [postponement]"; from this conversation, Bookstein said he "knew

2

[Romero] had to talk to somebody in order to get [his] loan assumed, and [he] assume[d] to get the foreclosure sale" moved.[1] In a later declaration, Bookstein stated that Romero "assured [him] that [Comerica] would delay the foreclosure sale . . . for 30 days."[2]

After that call, Romero did in fact recommend that Bookstein be permitted to assume the loan, but all of Bookstein's further negotiations were with other Comerica employees. Those other individuals postponed the foreclosure sale to June 21, 2012, to give Comerica time to evaluate Bookstein's proposal. On June 14, 2012, Bookstein spoke with a Comerica senior vice president, who said he would get back to Bookstein with an answer on the proposal. Four days later, on June 18, 2012, counsel for Comerica mailed and emailed Bookstein a letter informing him that Comerica decided not to pursue it. By that time, the statutory period for plaintiff to cure the default had expired. (See Civ. Code, § 2924c, subds. (a)(1) & (e) [borrower has right to cure default until five business days before foreclosure sale].)

The foreclosure sale went forward on June 21, 2012; Comerica bought the property.

## II.    Procedural Background

Plaintiff sued Comerica for declaratory relief, to set aside the foreclosure sale, for wrongful foreclosure, and for promissory estoppel. With respect to the promissory estoppel claim, plaintiff contended that Bookstein relied on Romero's promise to

---

[1]    During his deposition, Bookstein was also asked: "Did you understand that she had—that she on her own did not have the authority and that she would have to get permission for that to happen from any of her superiors?" Bookstein answered, "No." This exchange could be read to evince Bookstein's understanding that Romero *had* authority "on her own" to approve the loan assumption and to postpone the foreclosure sale, but we reject this interpretation because the poorly phrased question uses a double negative and is sandwiched immediately between Bookstein's unequivocal statements that Romero "had to talk to somebody."

[2]    Plaintiff also recounted what he heard about what was said during the conversation between Bookstein and Romero, but the trial court sustained Comerica's evidentiary objection to this evidence and plaintiff did not oppose this ruling.

postpone the foreclosure sale and that, absent that promise, Bookstein (as plaintiff's agent) would have cured the default by paying the arrearages. The breach of this promise deprived plaintiff of the right to cure the default and thus rendered the foreclosure wrongful and justified an injunction setting aside the foreclosure sale.

Comerica moved for summary judgment. Plaintiff opposed the motion, and filed his own separate statement. In replying to the opposition, Comerica objected to some of plaintiff's evidence.

The trial court held a hearing on the motion. At that hearing, the court sustained Comerica's objections, among other things, to (1) Bookstein's statement, in his declaration, that Romero "assured [him] that [Comerica] would delay the foreclosure sale" because that statement represented Bookstein's "conclusion," or "speculation," or "opinion" as to what Romero meant rather than "what she said," and (2) Bookstein's statement, in his deposition, that Romero said "she would continue the foreclosure sale until [they] worked out [their] deal" because plaintiff never cited that statement in his opposition papers or his separate statement. On the merits, the court concluded that the remaining evidence regarding the postponement showed "some negotiations, but . . . there was nothing promised." Because "there was nothing definite about [the] conversation" between Bookstein and Romero, plaintiff had not adduced a triable issue of fact as to whether Romero had made a "clear and unambiguous" promise to postpone the foreclosure sale; this failure of proof compelled the entry of summary judgment for Comerica on plaintiff's promissory estoppel claim as well as plaintiff's other claims.

Plaintiff timely appeals.

## DISCUSSION

On appeal, plaintiff argues that the trial court erred in granting summary judgment for Comerica. In his view, there is a triable issue of fact as to whether Romero made a "clear and unambiguous" promise to postpone the foreclosure sale once all of the pertinent evidence is considered.

A trial court may grant summary judgment to a defendant if, among other things, the defendant "show[s] 'that the plaintiff cannot establish at least one element of the

4

cause of action—for example, that the plaintiff cannot prove element *X*.'" (*Wall Street Network, Ltd. v. New York Times Co*. (2008) 164 Cal.App.4th 1171, 1176, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; Code Civ. Proc., § 437c, subds. (a) & (p)(2).) "'[O]nce a moving defendant has "shown that one or more elements of the cause of action . . . cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff [must] ". . . set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .""" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274, quoting *Merrill v. Nevegar, Inc.* (2001) 26 Cal.4th 465, 476-477; Code Civ. Proc., § 437c, subd. (p)(2).) In assessing whether the plaintiff has carried its burden, we look only to admissible evidence (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761), and "resolve any evidentiary doubts or ambiguities in plaintiff['s] favor" (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142). We review grants of summary judgment de novo (*Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 936), and we side with the majority of courts in reviewing evidentiary rulings underlying a summary judgment ruling for an abuse of discretion (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181; *Park v. American Title Co.* (2011) 201 Cal.App.4th 1418, 1427; *Miranda v. Bomel Construction Co.* (2010) 187 Cal.App.4th 1326, 1335; *Walker v. Countrywide Home Loans, Inc.*(2002) 98 Cal.App.4th 1158, 1169).[3]

## I.    Evidentiary Rulings

Plaintiff attacks both of the trial court's evidentiary rulings related to Romero's promise.

First, he argues that the trial court erred in determining that Bookstein's statement, in his declaration, that Romero "assured [him] that [Comerica] would delay the foreclosure sale" was an inadmissible "conclusion," "speculation," or "opinion."

---

[3]    Our Supreme Court has yet to take a position on whether the appropriate standard of review is abuse of discretion or de novo. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.)

Although a plaintiff bringing a promissory estoppel claim need not establish the "exact words" of the alleged promise (*De Hermosillo v. Morales* (1956) 146 Cal.App.2d 819, 824), the evidence he presents "must [be] evidentiary, rather than ultimate facts, or conclusions" (*Sheppard v. Morgan Keegan & Co.* (1990) 218 Cal.App.3d 61, 67). Plaintiff argues that, in some dictionaries, "assure" can mean "promise." However, in light of the totality of Bookstein's testimony, including his statements that Romero told him she needed to consult with other Comerica employees, the court did not abuse its discretion in concluding that the "assur[ance]" Bookstein perceived was an inadmissible conclusion as to what he surmised rather than admissible evidence of anything Romero said.

Second, plaintiff contends that the trial court erred in declining, pursuant to the so-called 'golden rule' of summary judgment (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Ins. Co.* (2005) 133 Cal.App.4th 1197, 1213), to consider Bookstein's statement in his deposition that Romero said "she would continue the foreclosure sale until [they] worked out [their] deal." We need not address this issue. Even if the trial court erred in excluding this evidence, its error was not prejudicial. That is because, as we discuss next, our analysis of the summary judgment motion leads to the same result even when that evidence (as well as the evidence that Romero assured Bookstein that Comerica would delay the foreclosure sale) is considered.

## II.    Summary Judgment

Under California law, a person can be bound by a promise that "the promisor should reasonably expect to induce action or forbearance on the part of the promisee" if the promise "'induce[s] such action or forbearance'" and "'if injustice can be avoided only by enforcement of the promise.'" (*Kajima/Ray Wilson v. Los Angeles Metropolitan Transportation Auth.* (2000) 23 Cal.4th 305, 310.) A plaintiff seeking to hold a defendant liable under this theory must prove (1) a promise clear and unambiguous in its terms, (2) reliance by the party to whom the promise is made, (3) reliance that is both reasonable and foreseeable, and (4) injury to the plaintiff due to the reliance. (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 416.) A promise is "clear and

6

unambiguous" in its terms if it is """"definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'""" (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 226 (*Aceves*).)

After evaluating the totality of the evidence presented on this issue, we conclude that plaintiff has not established that a triable issue of material fact exists as to whether Romero's statements to Bookstein on their telephone call constitute a "clear and unambiguous promise." Bookstein heard Romero say that she could not postpone the foreclosure sale on her own and still needed the approval of others. Where one party "immediately [puts] the offeree on notice that finalization of the terms will undoubtedly require further negotiations," it has not made a "clear and unambiguous promise." (*Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 891; see also *National Dollar Stores, Ltd. v. Wagnon* (1950) 97 Cal.App.2d 915, 919 ["An agreement that parties will, in the future[,] make such contract as they may then agree upon amounts to nothing"].)

Plaintiff levels two challenges to this analysis—one legal and the other factual. Legally, he argues that Romero's words in this case are akin to the promises found sufficient to uphold a claim for promissory estoppel in *Garcia v. World Savings Bank, FSB* (2010) 183 Cal.App.4th 1031 (*Garcia*), *Aceves*, *supra*, 192 Cal.App.4th 218, and *Martin v. World Sav. & Loan Assn.* (2001) 92 Cal.App.4th 803 (*Martin*). We disagree. *Garcia* involved a bank official who informed borrowers that their home would not "go to [foreclosure] sale because I have the final say-so and . . . I'll extend it" (*Garcia*, at p. 1035); here, Bookstein understood Romero to say that she *did not* have the "final say-so." *Aceves* involved a bank that agreed "not to foreclose on [a borrower's] home without first engaging in negotiations with her to reinstate and modify the loan on mutually agreeable terms" (*Aceves*, at p. 226); here, Romero only agreed to pass along to others at Comerica the proposal that Bookstein assume plaintiff's loan (which she did), but did not promise a postponement in the meantime. Lastly, *Martin* involved a homeowner who conditionally promised to name his lender as a cobeneficiary on any

7

earthquake insurance policy he obtained and, when he did so, was held to that promise (*Martin*, at p. 809); here, Romero did not make a conditional promise to postpone the foreclosure sale—she simply said she would *try* to get others to grant the postponement.

Factually, plaintiff points us to the two pieces of evidence the trial court excluded and argues that they, separately or together, create a triable issue of fact. Again, we disagree.

First, Bookstein's statement in his declaration that Romero "assured [him] that [Comerica] would delay the foreclosure sale" is, in the words of plaintiff's own counsel, "inconsisten[t] [with] . . . . Bookstein's deposition testimony" that Romero was confident she could convince the decision makers at Comerica to delay the sale. "In reviewing motions for summary judgment or adjudication, courts have long tended to treat affidavits repudiating previous testimony as not constituting substantial evidence of the existence of a triable issue of fact" (*Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 549), particularly where the affidavit is an "unexplained contradiction of an admission rendered by the party in discovery" (*Lobo v. Tamco* (2014) 230 Cal.App.4th 438, 446). (Accord, *Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087 ["It is well established that 'a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses'"]; *Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 144-145 [same]; *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1196 ["'flip-flop'" in testimony "'cannot create a triable issue of fact'"]; *Nunez v. R'Bibo* (1989) 211 Cal.App.3d 559, 563 [applying this principle to a *witness's* contradictory statements].) Because Bookstein's declaration in opposition to the summary judgment motion sets forth an unqualified promise to postpone that is inconsistent with his earlier deposition testimony regarding a qualified promise subject to further approval, and because Bookstein makes no effort to reconcile those two

contradictory statements, these self-contradicting statements made by plaintiff's agent cannot create a triable issue of fact.[4]

Plaintiff tries to avoid this conclusion, arguing that Bookstein's deposition testimony regarding Romero's need for others' approval refers solely to her "need to speak to her superiors about *the Buyout Transaction*, not a [postponement] of the [foreclosure] [s]ale." However, this interpretation cannot be reconciled with the plain text of the deposition transcript, or with Bookstein's further deposition testimony that the loan assumption and postponement were "all connected."

Second, Bookstein's deposition testimony that Romero said "she would continue the foreclosure sale until [they] worked out [their] deal" creates no triable issue as to whether she promised to postpone the foreclosure for at least 30 days. That is because this testimony indicates only that Romero agreed to a postponement "until [they] worked out [their] deal." Even if we construe this as a promise, it was never breached because Comerica did not hold the foreclosure sale until three days after it informed Bookstein that it was not interested in his loan assumption proposal.

In sum, the propriety of the trial court's summary judgment ruling boils down to one question: Is there a factual dispute as to whether Romero made a clear and unambiguous promise to postpone the foreclosure sale? The answer is "no." It is undisputed that Romero denied making any promise at all. It is also undisputed that Bookstein—the only person talking to Romero—said she promised *both* to request a postponement from others *and* to postpone the sale on the basis of her own authority. At worst, the evidence from Bookstein is contradictory and, as noted above, incapable of creating a triable issue of fact; at best, it establishes an ambiguous promise by Romero either to try to postpone or to postpone the sale. Whether or not such an ambiguous

---

[4] Of course, we could try to reconcile Bookstein's two statements by construing the "assurance" he references in his declaration as Romero's "assurance" to try to obtain a postponement. But that would leave plaintiff with an unenforceable agreement to try to obtain a postponement, which as noted above cannot support a claim for promissory estoppel.

9

promise might be sufficient to create a triable issue of fact had plaintiff sued for breach of oral contract, it is not enough to create a triable issue of fact for plaintiff's promissory estoppel claim because promissory estoppel requires the operative promise to be "clear and *unambiguous*."

Because this conclusion is sufficient by itself to affirm the trial court's grant of summary judgment, we have no occasion to reach the parties' further arguments regarding whether Romero had authority to bind Comerica, whether Bookstein (or, more to the point, plaintiff) reasonably relied on her statements, whether the trial court's rulings regarding the evidence of reliance were erroneous, or whether the dismissal of the promissory estoppel claim is alternatively supported by the statute of frauds or the lack of any consideration. Moreover, because we are affirming, we have no need to revisit the award of attorney's fees based on the trial court's ruling.

## DISPOSITION

The judgment is affirmed. Comerica is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>

_____
HOFFSTADT, J.

We concur:

_____, P. J.
BOREN

_____, J.
ASHMANN-GERST

10