[Civ. No. 22271.   Second Dist., Div. Two.   Mar. 20, 1958.]

J. W. VAN HOOK, Respondent, v. SOUTHERN CALIFOR-
NIA WAITERS ALLIANCE, LOCAL 17 (an Unin-
corporated Association), Appellant.

Alexander H. Schullman, J. W. Brown, S. L. Kurland, Spencer E. Van Dyke and Jack E. Hildreth for Appellant.

Cantillon & Cantillon for Respondent.

KINCAID, J. pro tem.*—This action was instituted May 11, 1954. A trial by jury resulted in a verdict for plaintiff and defendant appeals from the resulting judgment in the sum of $109,900 plus interest.

A second amended complaint sets forth causes of action based upon promissory estoppel and upon a contract. No evidence was offered or received under the second cause of action. This complaint alleges in its first cause of action that for many years prior to 1957 plaintiff was a salaried officer

*Assigned by Chairman of Judicial Council.

of the defendant union; that as such an officer he was required every two years to submit his candidacy to a vote of the membership; that at no time during his employment by defendant was there in effect any provision for the pensioning or retirement of members who had served defendant as salaried officers regardless of the length of time of such service; that prior to November 10, 1947, a restaurateur in Los Angeles County offered plaintiff employment for a term of 10 years at a fixed salary plus a percentage of the net profits; that plaintiff determined to accept this employment as it afforded him more financial security than his position with the union; that the fact of this offer of employment and the fact of plaintiff's intention to accept the same were communicated to defendant through its officers and members. That thereafter, and on or about the 10th day of November, 1947, and for the purpose of inducing plaintiff not to accept employment other than with the defendant, the defendant promised plaintiff that upon his retirement he would be entitled to certain benefits; that in reliance upon this promise of the defendant, plaintiff refused the offer of outside employment and remained in the service of defendant for a period in excess of two years. In conclusion, the complaint alleges that plaintiff retired and demanded performance of defendant's promise; that plaintiff was not paid or given the retirement benefits promised him; that on the contrary, the defendant repudiated its obligation to him; and that plaintiff has exhausted all the available and required trade union appellate procedures.

The answer of defendant admits that it is an unincorporated association existing under and by virtue of the laws of the State of California; that plaintiff was an officer of defendant for a long and continuous period of time prior to the 10th day of November, 1947, during which time plaintiff received a weekly salary for his services; that plaintiff's official capacity with defendant and his salary incident thereto, were contingent upon his being reelected at general elections held every two years; that there were no provisions in the by-laws or the constitution of the defendant, for the pensioning or retirement of union officials irrespective of their length of service. The defendant admits by its answer that plaintiff appealed to the international union, of which defendant is an affiliate, and admits that said appeal was denied; that every one of its members is required by the constitution to exhaust all remedies of appeal or protest before resorting to any other

court or tribunal, and that any member who brings a legal action against defendant without first availing himself of all remedies of appeal provided for in such constitution, shall thereafter be ineligible to hold any office in any local or international union. The defendant denies that the exhaustion of said appellate procedures was necessary in plaintiff's case; that plaintiff either received or intended to accept an offer of employment by Robert Murphy as alleged in the complaint.

At the inception of the trial the defendant moved pursuant to Code of Civil Procedure, section 597, that the court try the special issues raised by the plea of the statute of limitations. The court granted defendant's motion and a hearing on this special defense was had by the court sitting without a jury.

In connection with this hearing, and for all purposes of the trial, the plaintiff and the defendant entered into the following stipulations: (1) that at some time prior to October 27, 1947, respondent informed appellant that he intended to resign his elective office as executive secretary in order to accept an offer of employment by the House of Murphy; (2) that on October 27, 1947, and at a general membership meeting of appellant, the retirement resolution was read and the same was ordered referred to the executive board for its consideration since the resolution proposed the expenditure of money; (3) that on November 6, 1947, the executive board of appellant met, considered the retirement resolution and recommended that the same be adopted by appellant's membership; (4) that on November 10, 1947, a general membership meeting of appellant was held, whereat the retirement resolution together with the recommendations of the executive board were considered and the same were then and there adopted; (5) that on February 9, 1948, a general membership meeting approved the minutes of the general membership meeting of November 10, 1947; (6) that on March 6, 1950, Mr. Van Hook was defeated for reelection as secretary of appellant; (7) that on March 11, 1950, and prior to the expiration of his term of office, Mr. Van Hook wrote a letter to appellant wherein he stated that he was retiring and now availed himself of the retirement benefits promised him according to the terms of the resolution of November 10, 1947; (8) that on March 13, 1950, a general membership meeting carried a motion to refer the matter of respondent's retirement to the executive board; (9) that on March 23, 1950, the executive board of appellant directed that it employ an at-

torney to analyze the legal aspects of the resolution; (10) that on April 10, 1950, the executive ·board of appellant received an attorney's memorandum on the subject of the retirement resolution and ordered that the same be sent to the general president of the international union; (11) that on December 13, 1951, one Richard H. Cantillon, an attorney at law, communicated with the international president to ascertain what disposition, if any, had been made by him of respondent's claim to retirement benefits; (12) that on December 17, 1951, the international president responded to Mr. Cantillon's inquiry by letter, and stated, among other things: "It would appear to us that this is a simple trade union matter that does not require the services of an attorney . . ."; (13) that on February 18, 1952, respondent wrote a letter to appellant in which he recited the fact of his prior written notice and in which letter he enclosed the minutes of the meetings of October 27, 1947, November 6, 1947, November 10, 1947, and February 10, 1948, hereinabove referred to. Respondent also stated in said letter that the only information that was available to him relative to the appellant's disposition toward his claimed retirement benefits was contained in the minutes of the meetings of March 23 and 27, and April 6 and 10, 1950. Respondent also stated that unless prompt remittance was made of the money then due, he would take what action he deemed necessary; (14) that on February 25, 1952, appellant wrote a letter to respondent acknowledging receipt of the letter of February 18, 1952, and stating that legal counsel for appellant had advised them that they were "under no contractual obligation to pay you any money"; (15) that on March 6, 1952, respondent wrote a letter to the international president "[a]ppealing from the decision contained [in the letter of February 25, 1952]." This appeal was supported by copies of the pertinent 1947 resolution and minutes, together with a copy of the minutes of the meeting of February 10, 1948; (16) that on March 24, 1952, a general membership meeting of appellant adopted a resolution repudiating any obligation to respondent; (17) that on March 28, 1952, the international president denied respondent's "appeal" by rendering "Decision 3110." (The evidence discloses that on April 2, 1952, the executive board of appellant received and read Decision 3110 of the international president and referred the same to the general membership meeting of April 28, 1952, whereat "the fact was noted [in the min-

utes] that the General President denied the appeal.'' At this meeting a motion was made, seconded and carried that Decision 3110 be ''noted and filed''; (18) that on May 24, 1952, respondent appealed the decision of the general president (Decision 3110) of March 28, 1952, to the general executive board of the international union; and (19) that on July 3, 1952, the general executive board of the international union notified respondent that his appeal to them was denied and they affirmed the decision of the general president.

In support of the judgment the evidence discloses that while Mr. Van Hook was secretary of Local 17 he became acquainted with one Robert Murphy, an employer who was engaged in the successful operation of a restaurant in Los Angeles, California.

In the latter part of 1946 Mr. Van Hook had a conversation with Mr. Murphy wherein the latter proposed that Mr. Van Hook go to work for Mr. Murphy in his café. Following this initial conversation respondent and Mr. Murphy met on several occasions and discussed the subject of his employment by Murphy. The last of these meetings took place some time in the middle of the summer of 1947, at which time Mr. Murphy presented Mr. Van Hook with a written contract offering Mr. Van Hook the position of manager of the House of Murphy.

Shortly after Mr. Van Hook received the written contract of employment he communicated this fact to the officers of Local 17 who were assembled at an executive board meeting. Later he informed the general membership of Local 17 of his intention to accept Mr. Murphy's offer of employment and resign as secretary and business manager of Local 17. He informed them that he had an offer of a position with Bob Murphy at his House of Murphy at a better salary and on a long-term contract. He advised them that under Murphy's contract he would have security for the rest of his life.

On October 27, 1947, a resolution[1] signed by approximately

---

[1] ''RESOLUTION

''WHEREAS, for 20 years Brother J. W. Van Hook has loyally and faithfully served our Union as President, Business Agent, and Secretary-Treasurer, and

''WHEREAS, during this time, we have seen our Union grow from a very small membership to more than three thousand members, with almost 100 per cent organization of the waiters of Los Angeles, and

''WHEREAS, during the early period of our organization, Brother Van Hook and all of our officers made many sacrifices, personally and financially, in their efforts to organize the workers in our industry, and

''WHEREAS, the progressive steps made in elevating wage standards,

three hundred members was presented in a general membership meeting of Local 17. The resolution provided Mr. Van Hook would receive certain benefits upon his retirement as an officer of Local 17. The resolution urged that Mr. Van Hook not leave and find other employment. Because this resolution required the expenditure of monies the president and chairman presiding at the membership meeting prohibited the

bettering the working conditions of our membership, the care and welfare of our sick members, the burial of our deceased members, the ownership of our palatial home, and our substantial financial condition can mainly be attributed to the diligence, honesty, faithfulness, and ability of Brother Van Hook, and

"WHEREAS, James W. Van Hook has won the gratitude, respect and friendship of every member of Local 17, and

"WHEREAS, Our Local realizes that the expert knowledge of Brother Van Hook and his insight into the numerous and complicated ramifications and problems of the culinary profession are invaluable not only to Local 17 but to the entire Union, and

"WHEREAS, it is the desire of Local 17 to continue to receive the advice of Brother Van Hook and the benefit of his wide and varied experience in employee and employer relationships in this City, now therefore

"BE IT RESOLVED that the Executive Board and the President and Recording Secretary of this Local 17 be and they are hereby instructed to enter into a contract as of this date, to-wit, the 10 day of November, 1947, for and on behalf of Local 17 with James W. Van Hook whereby the Local agrees that upon his retirement as Secretary-Treasurer, Business Representative, he is to be employed in an advisory capacity as long as he shall live at a salary of 75% of the salary he is receiving at the time of his said retirement; as such advisor he is to confer with, advise and assist the Executive Board and officers of Local 17 whenever requested by them, or on his own initiative; he is to attend the meetings of the Executive Board of Local 17 and the Joint Executive Board with the privilege of voice, but no vote; he is also to attend the meetings of the State American Federation of Labor and of the American Federation of Labor, but only to represent the interests of Local 17 and not as a delegate. His traveling expenses to and from said A. F. of L. conventions and his hotel expenses while such conventions are in session are to be defrayed by Local 17. The contract shall provide that the foregoing duties, but not his compensation, will be subject to his physical condition permitting.

"BE IT FURTHER RESOLVED that it is not the intent of this resolution to urge the early retirement or dispense with the valuable services of Brother Van Hook, but to assure him financial security so that he will not feel it necessary to find other employment than that in which he is now engaged as the loss of his services would be of great damage to Local 17.

"BE IT FURTHER RESOLVED that this resolution be spread upon the minutes of Local 17, and that this signed resolution be attested, signed and stamped with the seal of the Local by the President and Recording Secretary and presented to Brother Van Hook.

Adopted: Nov. 10, 1947"

/s/ Samuel Gessin Recording Secretary

members from acting thereon and referred the resolution to the executive board.

On November 6, 1947, the executive board of Local 17 met and after excluding Mr. Van Hook, who was a member of that board, from participating in the proceedings, the retirement resolution was considered. While the resolution was under consideration the president left the meeting and inquired of Mr. Van Hook whether or not he would decline the offer of employment he had received from Mr. Murphy if the executive board recommended passage of the retirement resolution. Mr. Van Hook told the president that if the executive board recommended passage of the retirement resolution and if the general membership adopted this recommendation, he would feel it his duty to remain with Local 17 and refuse Mr. Murphy's offer.

On November 10, 1947, a general membership meeting of appellant was convened. There were more than two hundred members at this meeting and the resolution bearing that date and providing for the retirement of Mr. Van Hook was unanimously passed.

A copy of the retirement resolution passed by Local 17 was handed to Mr. Van Hook by the recording secretary. Mr. Van Hook then informed Mr. Murphy that he would not be able to accept his offer of employment as he considered himself under the circumstances to be duty bound and obligated to remain in the service of Local 17.

Sometime shortly after the meeting of February 9, 1948, and when Mr. Van Hook made inquiry relative to a contract pursuant to the resolution of November 10, 1947, the president of Local 17 told him that there wasn't any need for a contract as the resolution was couched in the same language as the resolution by which the general president of the American Federation of Musicians was retired.

At an election of officers held on March 6, 1950, Mr. Van Hook was defeated in his effort to be reelected to the office of secretary of Local 17.

On March 10, 1950, and prior to the actual expiration of his term of office as secretary of Local 17, he retired and gave notice that he was availing himself of the benefits promised by the 1947 resolution.

Mr. Van Hook then related in chronological order the subsequent procedures, both preliminary and appellate, followed by him within the trade union structure. He testified as to his various demands and appeals and he concluded by identi-

fying as exhibits the decisions of the general president and executive board which denied his appeal for relief within the union organization.

Defendant-appellant argues that the court erred in instructing the jury that the defense of the statute of limitations was not available to defendant, contending that plaintiff's cause of action accrued no later than March 6, 1950, the day he was defeated for reelection as secretary. Defendant claims that a two-year limitation applies on the ground that the cause of action is not based upon an instrument in writing and that, even assuming that the resolution constituted an instrument in writing, the four-year period would have expired on March 6, 1954, and prior to the filing of the complaint herein.

A cause of action accrues at the moment when the party owning it is entitled to begin and prosecute an action thereon. The term "accrue" as applied to a cause of action, means to arrive; to commence; to come into existence; to become a presently enforceable demand. (*Smith* v. *Minnesota Mut. Life Ins. Co.,* 86 Cal.App.2d 581, 590 [195 P.2d 457].)

"It is well recognized that the running of the statute of limitations is suspended during any period in which the plaintiff is legally prevented from taking action to protect his rights." (*Dillon* v. *Board of Pension Commrs.,* 18 Cal. 2d 427, 431 [116 P.2d 37, 136 A.L.R. 800] ; see *Skaggs* v. *City of Los Angeles,* 43 Cal.2d 497, 500 [275 P.2d 9].) It follows then if plaintiff was first required to exhaust his internal remedies within the organization by way of successive appeals before filing his action in the courts the statute of limitations was suspended until July 3, 1952, the date when the general executive board of the international union notified plaintiff that his appeal to them was denied and they affirmed the decision of the general president. In this event, the action having been filed on May 11, 1954, the two-year statute of limitations would not have run.

The constitution of the international union in effect at the time here in question is ambiguous in its terms as to the right of a member to appeal to the convention. Section 13 provides: "LIMITATION ON RIGHTS OF MEMBERS TO APPEAL. Except as stated herein, an appeal of a member may not be taken beyond the General Executive Board." Section 12 provides: "APPEAL BODIES. Appeals may be taken from a decision of a Local Union to the Joint Executive Board, if one

exists . . . decisions of the General Executive Board may be appealed to the Convention; however where the penalty imposed does not exceed a fine of $100.00 or suspension of more than thirty (30) days, an appeal as of right may not be taken beyond the General President.'' It is difficult to ascertain from these terms whether an appeal to the convention would be limited to fines exceeding $100 or suspension of members for more than 30 days. This is further complicated by section 14 providing that ''Appeals to the Convention must obtain the approval of the Law Committee before being submitted to the Convention. When appeals by General Officers or International Organizers are involved, the Law Committee shall grant such right to appeal and establish the rules for conducting the hearing before the Convention.'' It would appear then that if such an appeal were taken by one not a general officer or international organizer no such right need be granted nor rules for conducting the hearing before the convention be established.

Defendant asserts that a convention of the international union would have been held in Atlantic City, New Jersey, in April 1953. This would have necessitated another nine or more months delay in obtaining a decision. In the light of the ambiguities and uncertainties of the foregoing constitutional provisions, the added delay and the continuing opposition to plaintiff's claim it is reasonable to find that plaintiff was excused from any further attempted appeal beyond the ruling of the general executive board as being futile. (*Mooney* v. *Bartenders Union Local No. 284*, 48 Cal.2d 841, 844 [313 P.2d 857] ; *Cason* v. *Glass Bottle Blowers Assn.*, 37 Cal.2d 134, 143 [231 P.2d 6, 21 A.L.R.2d 1387] ; *DeMonbrun* v. *Sheet Metal Workers Intl. Assn.*, 140 Cal.App.2d 546, 562 [295 P.2d 881].)

Defendant now contends that plaintiff's cause of action arises out of a claim for money rather than involving a matter of internal union discipline and therefore it was not necessary for plaintiff to first exhaust the internal remedies of the trade union under its constitution and that he could have filed his action in the courts in March 1950. Defendant cites *DeMonbrun* v. *Sheet Metal Workers Intl. Assn., supra,* and *Mooney* v. *Bartenders Union Local No. 284, supra,* in support of this contention. These cases acknowledge the general and established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a member must

first invoke and exhaust the remedies provided by that organization applicable to his grievance. (*Holderby* v. *International Union etc. Engineers*, 45 Cal.2d 843, 846 [291 P.2d 463].) The Mooney case involved the right of union members to the revelation of any misuse of funds by an immediate examination of the organization's books. The DeMonbrun case involved a claim for accounting and wrongful misappropriation of union funds. In each of these cases the defendant union insisted that the plaintiffs must first exhaust the internal remedies within the organization before going to the courts but each case was held under the facts there existing to be an exception.

In the Holderby case it was again contended that the plaintiff had failed to exhaust the remedies available within the union and that he therefore was not entitled to judicial relief. After reciting the above quoted general jurisdictional rule first requiring the exhaustion of internal remedies the court said (pp. 846-847, 849) : ''The plaintiff claims that an exception to the general rule made it unnecessary that he pursue the internal remedies for review before commencing this action. In *Weber* v. *Marine Cooks' & Stewards' Assn.*, 93 Cal. App.2d 327 [208 P.2d 1009], it is stated at page 338 that 'where an organization has violated its own laws and arbitrarily violated a member's property rights the rule of exhaustion of remedies by appeal to a higher body within the organization need not be adhered to before direct resort to a judicial tribunal.' (See *Harris* v. *National Union etc. Cooks & Stewards*, 98 Cal.App.2d 733 at 736 [221 P.2d 136].) If such an exception is construed as broadly as the quoted language would permit, it would make it unnecessary for any party with a justified grievance involving personal and property rights against an organization of which he is a member, including the plaintiff in the present case, to have the matter corrected internally by the machinery provided before resorting to the courts. The exception in such a case would swallow the rule, a result clearly not intended by the cases relied on as authority for the broad interpretation sought by the plaintiff to justify this action. . . . A violation of other laws and wrongs done within the organization are intended to be conciliated and corrected by the appellate machinery provided therein, if properly invoked by an aggrieved party and applied by the organization. If recourse to such appellate machinery is not sought an aggrieved party foregoes his right

to a judicial review regardless of the breach of its own rules by the organization in causing the grievance in the first instance.''

The steps taken by the parties herein as well as the record of this case clearly demonstrate that both plaintiff and defendant considered themselves obligated to first invoke and exhaust the internal remedies within the organization by way of successive appeals before instituting any action in the courts on plaintiff's claim. Here defendant union seeks to prejudice one of its members because of adherence by both parties to this union tradition. No objection to these procedures so invoked by plaintiff was ever voiced by defendant until the statute of limitations was pleaded as an affirmative defense in its answer to the case on file. Defendant actively participated in the successive appeals within the organization and the delays incidental to the obtaining of the final decision of rejection of the appeal by the general executive board of the international union on July 3, 1952, may largely be charged to it. Indeed the evidence indicates that for a period of about one and a half years plaintiff's claim lay dormant with no decision having been rendered thereon by either the general president or the defendant Local 17.

By its conduct herein the defendant lulled plaintiff into a sense of false security in implying that by proceeding through the successive steps of appeal provided by the constitution of the international union his claim might be recognized or a settlement reached. ■ ''It is well settled that where delay in commencing an action is induced by the conduct of the defendant, he cannot avail himself of the defense of the statute [of limitations].'' (*Gaglione* v. *Coolidge,* 134 Cal.App.2d 518, 527 [286 P.2d 568].) That the defendant is estopped by its own conduct from now asserting the defense of the running of the statute of limitations against the plaintiff herein is further shown by the rules so clearly set forth in *Industrial Indem. Co.* v. *Industrial Acc. Com.,* 115 Cal.App.2d 684, 689, 690 [252 P.2d 649]. ■ ''The equitable doctrine of estoppel *in pais* is applicable in a proper case to prevent a fraudulent or inequitable resort to the statute of limitations. (Citations.) A person by his conduct may be estopped to rely on the statute. Where the delay in commencing an action is induced by the conduct of the defendant, it cannot be availed of by him as a defense. (Citations.) ■ When the act or promise of one causes another to do or forbear to do something which he otherwise would have done, the other is estopped from

taking advantage of the act or omission caused by his own act or promise. (Citations.) ■ One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause him to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his conduct as a defense to the action when brought. (Citation.)

■ "Actual fraud in the technical sense, bad faith, or an intent to mislead, are not essential to create such an estoppel. It is sufficient that the debtor made misrepresentations or so conducted himself that he misled the creditor, who acted thereon in good faith to the extent that he failed to commence action within the statutory period. (Citations.) ■ Acts or conduct which wrongfully induce a party to believe an amicable adjustment of his claim will be made, may create an estoppel against pleading the statute. (Citation.) An insurer cannot hold out a hope of amicable adjustment of a claim and thus delay action against it, and then plead the delay caused by its own conduct as a defense to an action when brought. (Citation.) It is only when a substantial period for instituting proceedings supervened after expiration of the delay engendered by a party that his conduct or representations will not estop him from asserting the bar of the statute, or where such conduct or representations did not in fact induce the party to forbear from institution [sic] proceedings. (Citation.) ■ A party has a reasonable time in which to bring his action after the estoppel has expired. (Citation.)" (See also *Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346, 350 [159 P.2d 24]; *Carruth* v. *Fritch*, 36 Cal.2d 426, 434 [224 P.2d 702, 24 A.L.R.2d 1403]; *Mills* v. *Mills*, 147 Cal.App.2d 107, 120 [305 P.2d 61].)

■ The evidence fully supports the implied finding of fact that the acts, representations and conduct of defendant and the officers of the international union lulled plaintiff into a sense of security preventing him from instituting proceedings before the running of the statute, that plaintiff relied thereon to his prejudice and that an estoppel exists as against defendant. (*Industrial Indem. Co.* v. *Industrial Acc. Com., supra,* 115 Cal.App.2d 684, 690; *Cruise* v. *City & County of San Francisco,* 101 Cal.App.2d 558, 562 [225 P.2d 988].)

Since plaintiff brought his action within the two-year period following receipt by him of notice of denial of his appeal by the general executive board of the international union this is within a reasonable time after the estoppel has expired.

Plaintiff's second amended complaint pleads facts setting forth a cause of action for promissory estoppel. Defendant maintains that the court erred in its instructions to the jury as to this subject; that the evidence is insufficient to establish promissory estoppel against defendant and there was not and could not be promissory estoppel as a matter of law.

The elements necessary for the doctrine of promissory estoppel are well set forth in *Graddon* v. *Knight*, 138 Cal.App.2d 577, 583 [292 P.2d 632], as (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; (4) the party asserting the estoppel must be injured by his reliance. And at page 582 the rule is stated as set forth in section 90, Restatement of Contracts: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Also section 1962, subdivision 3, Code of Civil Procedure is there quoted: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it . . ."

Applying the foregoing rules to the evidence in this case for the purpose of testing both the court's instructions on the subject and the finding of promissory estoppel as against defendant we find such evidence amply sufficient in each instance. The duly adopted resolution of November 10, 1947, is a clearly worded undertaking by defendant to assure or promise plaintiff the payment to him in the future of the retirement benefits therein definitely specified. It states it is "to assure him financial security so that he will not feel it necessary to find other employment than that in which he is now engaged as the loss of his services would be of great damage to Local 17." The word "assure" is a synonym for the word "promise." It is evident that by this resolution defendant not only intended to and did assure plaintiff of future financial security if he would continue his employment but deliberately intended to induce plaintiff to forego any other offer of employment.

There is material evidence which the trier of facts was entitled to believe that in reliance upon the promise of

defendant, plaintiff rejected other remunerative employment offered him by a third party. That this employment was of substantial character is established by the showing that it was by a well-known restaurant under a 10-year contract at a specified salary of $250 per week, plus a percentage of the profits of the business. Upon advising defendant of this proffered and remunerative employment, upon the urging of Mr. Finnigan, the then president of defendant local and upon adoption of the resolution by defendant the new employment was rejected; said employment was rejected in reliance upon the resolution and upon the assurance therein contained of future financial security. Under the terms of the promise he was asked and was expected to continue his active services in behalf of defendant, the retirement provisions and payments to commence only at such time as his retirement became effective. He was thereafter reelected as secretary-treasurer and served for another two-year term. He stood for reelection again and was defeated for another term and then, on a date prior to the expiration of his term of office, notified defendant in writing of his retirement and of his demand for the retirement benefits promised him according to the provisions of the resolution. This evidence sufficiently establishes a promissory estoppel as to defendant in favor of plaintiff and the jury was correctly instructed as to this subject.

Other cases illustrative of the doctrine of promissory estoppel are *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154], wherein a police officer was induced to resign his position upon the representation of defendants that they would employ him for a period of 10 years at a stipulated salary and would give him a written contract to that effect. After working for defendants for two years the written contract was not given him and his employment was terminated by defendants without cause. The court rejected appellants' contentions, holding they were estopped by their conduct and promises from denying plaintiff's right to the benefit promised him, saying (p. 794): ''It was the change of position caused by his resignation from the police department upon which his claim wholly rests, and this resignation was, of course, no part of the performance of the contract of service, but was something that must be done by plaintiff before he could begin to perform, as was known to the defendants. *Plaintiff's case, in this regard, would be just as strong if after his resignation he had been prevented by defendants from beginning to perform.*'' (Emphasis added.)

In *West* v. *Hunt Foods, Inc.*, 101 Cal.App.2d 597, 604, 605 [225 P.2d 978], defendant assured its employee-plaintiff that if he would remain with the company he would be given a pension upon his retirement. In reliance on such promise he remained with the company. The court held that a promissory estoppel was thus created and defendant was obligated to pay plaintiff the promised pension. (To the same effect see *Hunter* v. *Sparling*, 87 Cal.App.2d 711, 725, 726 [197 P.2d 807]; *Wade* v. *Markwell & Co.*, 118 Cal.App.2d 410, 419 [258 P.2d 497, 37 A.L.R.2d 1363]; *Frebank Co.* v. *White*, 152 Cal.App.2d 522, 525 [313 P.2d 633].)

We have considered the other incidental points raised by appellant but deem them of no merit and that further discussion as to them is unnecessary

The judgment is affirmed.

Ashburn, Acting P. J., and Herndon, J., concurred.

A petition for a rehearing was denied April 17, 1958, and appellant's petition for a hearing by the Supreme Court was denied May 14, 1958.