[Civ. No. 34523. Second Dist., Div. Three. Mar. 25, 1970.]

MEYER BLATT, Plaintiff and Appellant, v.
UNIVERSITY OF SOUTHERN CALIFORNIA et al.,
Defendants and Respondents.

**COUNSEL**

Wirin, Rissman, Okrand & Posner and Paul M. Posner for Plaintiff and Appellant.

Musick, Peeler & Garrett and Richard D. Dean for Defendants and Respondents.

**OPINION**

**SCHWEITZER, J.**—Appeal from a judgment dismissing an action following an order sustaining a general demurrer without leave to amend to the second amended complaint. The complaint is for injunctive and declaratory relief and seeks to compel the admission of plaintiff to membership in the Order of the Coif, a national honorary legal society.

### The Pleadings

Plaintiff was a June 1967 graduate of the School of Law, University of Southern California, and is a member of the California bar. Defendants are the University of Southern California, the national society known as the Order of the Coif, the local chapter of the society, and the members of the committee of the local chapter having the authority and responsibility to elect members from graduating students.

The complaint alleges that the Order of the Coif (hereinafter referred to as the Order) gives recognition to high scholastic grade levels attained by law students; that members are elected from law students in the top 10 percent in scholarship in those accredited law schools having a chapter; that defendant University of Southern California has a chapter; that "[e]lection to the Order of the Coif elevates the esteem, standing and position of

the law student elected in the eyes of the school faculty, fellow students, judges, the legal profession and the public at large; and greatly enhances his employment possibilities and economic position after graduation and admittance to the Bar"; that plaintiff was a night law student at the University of Southern California from September 1961 until graduation in June 1967; that the individual defendants were members of the selection committee of the local chapter of the Order and were authorized to establish the policy and rules for election of members within the limits of its constitution[1]; that after plaintiff became a student the individual defendants represented to him that if he were in the top 10 percent of the graduating class, he "would be eligible for election to membership in the Order;" that plaintiff relied on these representations in order to attain membership in the Order, ranked fourth scholastically in his graduating class of 135 students, and was thereby in the top 10 percent of his class in scholarship.

The complaint further alleges that in addition to his scholastic achievement plaintiff received awards for excelling in six classes and the highest grade in another class; that he was of good moral character, "worthy of the honor," and that his non-election "was not due to his lack of worthiness, lack of character or unfitness"; that after his non-election the dean of the law school, who was also president of the local chapter of the Order, stated to plaintiff in a letter that plaintiff was "obviously the sort of student who should qualify for election" and added: "Both as your dean and as one of your instructors I wish to go on record as testifying to my pleasure and satisfaction in your performance throughout your law school career."

---

[1] Article II, section 4 provides: "On a date to be fixed by the by-laws of each chapter, but not before March 1 or after July 31 of each year, each chapter shall elect from the group comprised of persons who have received law degrees subsequent to July 31 of the previous year plus members of the Senior class who are prospectively eligible for graduation before July 31 of the current year, a number of persons not exceding 10 per cent of the whole group (subject to the proviso that if 10 per cent be less than three, at least three members may be chosen) in the following manner: The secretary of the chapter shall obtain from the dean of the school a list containing the names of the 10 per cent (or of the three persons if 10 per cent be less than three) who, according to the official records of the school, rank highest in scholarship in the group from which elections are to be made. From this list the active members of the chapter shall, at a meeting called in accordance with the local by-laws, elect such persons as, in their opinion, are worthy of the honor. No chapter shall elect to membership any persons whose name is not on the list thus certified to the chapter by the dean, except as otherwise provided in Article II, Section 3, 6 and 7 of this Constitution. In no event shall a chapter elect more than 10 per cent of the group even though two or more are tied for last place; provided that in computing the 10 per cent, one additional member may be chosen if the remainder is 5 or over. In electing from the list above named the members of the chapter may take into consideration, in addition to scholastic grade, activities that contribute directly to legal education such as legal research and writing. The members of the chapter may also take into consideration the character of the candidates and may reject any persons whose character unfits him for membership in the Order."

Plaintiff alleges that in June 1967 the committee elected seven or eight members to the Order who ranked below him in scholastic achievement; that plaintiff was not elected because "membership was restricted to students who, being eligible for the school's Law Review, accepted the invitation to work on the Law Review and completed their assignments successfully"; that said reason "was unreasonable, arbitrary and contrary to the representations" mentioned above, and was not applicable to plaintiff because it was a policy adopted after said representations were made to plaintiff; that prior to the adoption of the policy plaintiff served on the Law Review and submitted articles for publication therein; that after the adoption of the policy, plaintiff was not advised that it applied to him but was advised that the policy was applicable only to day students who thereafter became eligible for Law Review work; that plaintiff relied upon this advice and information and did not thereafter apply for or accept a Law Review assignment, although he did thereafter submit articles for publication in the Law Review, none of which, however, were published; and that other students who did not complete Law Review work and who were in a similar position to plaintiff were elected to the Order.

The complaint concludes by alleging the plaintiff is qualified and entitled to membership in the Order, that defendants breached their promises and representations, and that he was denied membership therein by arbitrary and discriminatory action based upon erroneous and invalid reasons. The complaint seeks a declaration of the rights and duties of the parties, a determination that plaintiff is entitled to election to membership in the Order, and an order directing defendants to admit plaintiff to membership.

## Contentions

On appeal plaintiff contends that the complaint sets forth a justiciable issue and that it sufficiently alleges a breach of contract and promissory estoppel. We hold that each contention is without merit and that defendants' demurrer to the second amended complaint was properly sustained without leave to amend.

## Judicial Review of Membership Exclusion

Plaintiff argues that organizations whose membership offers the member educational, professional or financial advantage cannot arbitrarily and discriminatorily deny admission to one who has met and complied with all the stated and represented requirements of membership. He admits that the courts in the past have refused to interfere with professional and honorary societies to compel one's admission (8 A.L.R.2d 964) but calls our attention to recent cases where courts have interfered to compel admission

to membership in voluntary associations that have some effect upon the applicant's professional or economic success, or where the association has a professional or economic interest. (*Pinsker* v. *Pacific Coast Soc. of Orthodontists*, 1 Cal.3d 160 [81 Cal.Rptr. 623, 460 P.2d 495]; *James* v. *Marinship Corp.*, 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900] *Kronen* v. *Pacific Coast Soc. of Orthodontists*, 237 Cal.App.2d 289 [46 Cal.Rptr. · 808]; and *Falcone* v. *Middlesex County Medical Soc.*, 34 N.J. 582 [170 A.2d 791, 89 A.L.R.2d 952].) He attributes this change in judicial attitude primarily to the recognition by the courts of the increasing effect that private and voluntary organizations have on the individual's ability and access to the economic marketplace and his opportunities to earn a living or practice his trade or profession.

In *Kronen, supra,* 237 Cal.App.2d 289, the court determined preliminarily that a dentist whose application for membership in defendant professional associations had been rejected was entitled to judicial review of the circumstances surrounding the rejection to determine whether the rejection was an arbitrary or unlawful exercise of the power to exclude him. The evidence indicated that membership in the associations would entitle the plaintiff to be identified as a specialist, the court stating on page 304: "It is common knowledge that in this day of specialization, the doctor or dentist limiting his practice to a specialty enjoys a prestigious position with attendant economic advantages. It appears to us on this record that as a practical matter, an orthodontist like plaintiff cannot successfully limit his practice to orthodontics unless he becomes an active member of defendant organizations." The court found, however, that the rejection of plaintiff's application was proper because he failed to meet the requirement that he be recommended by two acitve members of the associations.

Unlike *Kronen, supra,* in *Pinsker, supra,* 1 Cal.3d 160, plaintiff had met all the requirements of membership in the defendant professional associations except election to membership. The evidence indicated that membership would qualify him for the dental specialty of orthodontics, would enable him to command higher fees, would increase the number of dentist referrals, and would make him eligible to enroll in advanced professional courses. In reversing the judgment for defendants that had been based on the trial court's finding that there had been no showing of "economic necessity" for membership, the Supreme Court stated at page 166: "Because of the unique position in the field of orthodontics occupied by defendant [American Association of Orthodontists] and its constituent organizations, membership therein, although not economically necessary in the strict sense of the word (as was the case in *Falcone*), would appear to be a practical necessity for a dentist who wishes not only to make a good living as an orthodontist but also to realize maximum potential

achievement and recognition in such specialty. Defendant associations hold themselves out to the public and the dental profession generally as the sole organizations recognized by the [American Dental Association], which is itself a virtual monopoly, to determine standards, both ethical and educational, for the practice and certification of orthodontics. Thus, a public interest is shown, and the associations must be veiwed as having a fiduciary responsibility with respect to the acceptance or rejection of membership applications. . . . Under the circumstances, an applicant for membership has a judicially enforceable right to have his application considered in a manner comporting with the fundamentals of due process, including the showing of cause for rejection."

In *James, supra,* 25 Cal.2d 721, the California Supreme Court sustained an order which restrained interference with the employment of the plaintiff where the union had a closed shop agreement with the employer and declined to admit the plaintiff to membership in the union, stating at page 731: "Where a union has, as in this case, attained a monopoly of the supply of labor by means of closed shop agreements and other forms of collective labor action, such a union occupies a quasi public position similar to that of a public service business and it has certain corresponding obligations. It may no longer claim the same freedom from legal restraint enjoyed by golf clubs or fraternal organizations. Its asserted right to choose its own members does not merely relate to social relations; it affects the fundamental right to work for a living."

*Falcone, supra,* 34 N.J. 582 [170 A.2d 791, 89 A.L.R.2d 952], involved a doctor of osteopathy and medicine who had been dropped from the staffs of several hospitals as a result of the refusal of the county medical association to admit him to membership. As a consequence he was effectively handicapped from practicing his profession. Relying on *James, supra,* the New Jersey Supreme Court reached a similar conclusion and ordered his admission to membership.

Plaintiff alleges that "[e]lection to the Order of the Coif elevates the esteem, standing and position of the law student elected in the eyes of the school faculty, fellow students, judges, the legal profession and the public at large; and greatly enhances his employment possibilities and economic position after graduation and admittance to the Bar." He contends that his allegation that non-election will adversely affect his professional and economic interests is sufficient to bring him within the purview of the cited cases, that this is a question of fact, not of law, and therefore he should be permitted to offer evidence in support of this allegation. In effect he argues that the courts may compel admission to membership in voluntary organizations in *any* situation where membership may

enhance or affect one's professional or economic interests. Such is not the law. The cited cases do not support this contention; they are expressly limited in application to situations affecting the right to work in a chosen occupation or specialized field thereof. We have been unable to find any authority that supports plaintiff's contention.

To adopt plaintiff's contention would subject to judicial review the membership selection activity and policies of *every* voluntary organization because it is difficult to conceive of any organization that does not in some respect involve or affect professional or economic interests of its members. It would also subject to judicial review procedures used in selecting persons for advanced and honorary degrees, and for selection of members for such honorary societies as Phi Beta Kappa, each of which presumably have some resultant professional or economic benefit. We know of no compelling factual or policy consideration for holding that judicial relief should be made available to compel admission to membership in *every* voluntary organization, especially in honorary organizations where outstanding scholars or leaders of a profession are best qualified to evaluate the record of those being considered for membership.

▇▇ Membership in the Order does not give a member the right to practice the profession of law. It does not signify qualifications for any specialized field of practice. It has no direct bearing on the number or types of clients that the attorney-member might have or on the income he will make in his professional practice. It does not affect his basic right to earn a living. We hold that in the absence of allegations of sufficient facts of arbitrary or discriminatory action, membership in the Order is an honor best determined by those in the academic field without judicial interference. Plaintiff's allegations of arbitrary or discriminatory action on the part of the election committee are insufficient to state a cause of action. No justiciable issue has been presented.

### Breach of Contract and Promissory Estoppel

Plaintiff contends that his complaint states a cause of action for breach of contract; that the necessary elements of a contract are present; that there was an offer, representations by defendant individuals that if he ranked in the top 10 percent of his class, he *would be eligible* for election to membership in the Order; and that there was his acceptance, he "worked very hard" to and did achieve grades which placed him in the top 10 percent of his class. Plaintiff recognizes that the offer spoke in terms of eligibility for election and not that he would be elected, but states that there were only two requisites for election as to persons in the top 10 percent: first, "activities that contribute directly to legal education such

as legal research and writing," and second, whether he was of fit character. He argues that since the complaint alleged, and the demurrer admitted that he was rejected for neither of these grounds, the court, in determining the sufficiency of the complaint, must accept as true his allegations that he complied with all the subjective and objective requirements for admittance.

■   Plaintiff seeks to establish a unilateral contract, one in which a promise is given in exchange for an act, forbearance or a thing. (1 Witkin, Summary of Cal. Law (1960) Contracts, § 3.) There was no benefit flowing to defendants as a result of plaintiff's hard work or his class ranking. Any benefit that accrued inured to plaintiff. Consequently there was no consideration for any alleged promise or representations of defendants. Therefore, if any contract existed, it was because of the doctrine of promissory estoppel, a substitute for consideration. (1 Witkin, Summary of Cal. Law (1960) Contracts, § 85; 18 Cal.Jur.2d Rev., Estoppel § 10.) Promissory estoppel is defined in section 90 of the Restatement of Contracts as: "A promise which the promisor should reasonably expect to induce action or forbearance of a *definite and substantial character* on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (Italics added.)

■   Plaintiff argues that the alleged promise in this case is similar to cases where a promisor was estopped from denying the promised payment of a bonus, pension or reward, citing *Van Hook* v. *Southern Cal. Waiters Alliance,* 158 Cal.App.2d 556 [323 P.2d 212], *Frebank Co.* v. *White,* 152 Cal.App.2d 522 [313 P.2d 633], *West* v. *Hunt Foods, Inc.,* 101 Cal.App.2d 597 [225 P.2d 978], and *Hunter* v. *Sparling,* 87 Cal.App.2d 711 [197 P.2d 807]. The classic case of *Hamer* v. *Sidway,* 124 N.Y. 538 [27 N.E. 256], is illustrative of his point. In *Hamer* it was held that abstaining from smoking and drinking, though in fact a benefit to the promisee's health and finances and of no benefit to the promisor, was a legal detriment; that if requested by the promisor, it was a sufficient substitute for consideration and would support an action based upon the principle of promissory estoppel.

An impassioned argument of detriment and change of position by plaintiff has been submitted. He points out that he might well have decided to take an easier path through law school and graduate with an average scholastic record instead of attaining excellence; that he had this initial choice; that after the individual defendants "enticed" him by their promises, he took the tougher road; that his extra effort for scholastic achievement was in reliance upon and motivated by the representations of the promised award. He compares election to the Order to a prize offered for certain

achievements, stating that election is not a mere gratuity granted without achievement, but is the promised award for inspired achievement.

The bonus, pension and reward cases relied on by plaintiff are not applicable here since in each case the promisee suffered actual detriment in foregoing an act, in refusing other employment or in expending definite and substantial effort or money in reliance on a promise. Although it has been stated that "[t]he validity of the consideration does not depend upon its value, the law does not ordinarily weigh its quantum" (*Blonder* v. *Gentile,* 149 Cal.App.2d 869, 875 [309 P.2d 147]), we conclude that in this case the alleged promises or representations were such that it cannot be said that they induced "action . . . of a *definite and substantial character* on the part of the promisee." (Rest., Contracts, § 90.) (Italics added.)

■ Furthermore, even if it be assumed that the doctrine of promissory estoppel were applicable, we note that plaintiff has not pleaded a breach of contract. There is no allegation that it was promised that he would in fact be admitted to membership if he graduated in the top 10 percent of his class. The allegation is that he "would be eligible for election" if he attained such position. The complaint alleges that his name was on the eligible list and did receive consideration by the election committee under the general standards set forth in the Order's constitution. This is all that the individual defendants promised. The facts pleaded do not support the alleged conclusion that there was a breach of contract.

Judgment affirmed.

Ford, P. J., and Allport, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 21, 1970. Peters, J., Tobriner, J., and Burke, J., did not participate therein.