John W. BACON, A. E. Lafayette, Louis Ottone, Jr., David R. Cox, William W. Ward, Jr., A. L. Diamond, Roy Mack Everett Matzen, Roy Benner, Edwin Laboure, and James Whiting, Trustees of the California Butchers Pension Trust Fund, Plaintiffs and Counterdefendants,

v.

John K. WONG and Johnnie B. Lee, on behalf of themselves and all other persons similarly situated, Defendants and Counterclaimants.

No. C–75–2481–CBR.

United States District Court,
N. D. California.

Feb. 9, 1978.

---

Charles P. Scully, Donald C. Carrol, Stephen G. Schrey, McLaughlin & Irvin, William B. Irvin, Patrick W. Jordan, San Francisco, Cal., for plaintiffs and counterdefendants.

Hon Chew, John H. Wallace, Oakland, Cal., for defendants and counterclaimants.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This lawsuit involves the right to restitution of various employers who made mistake contributions to the California Butchers' Pension Trust Fund ("Fund") on behalf of ineligible employees.

The Court's Memorandum of Opinion filed on December 27, 1977, 445 F.Supp. 1177, sets forth the factual and procedural background of the case. The mistakenly contributing employers, who were plaintiffs in the original lawsuit and who are now and will hereinafter be referred to as defendants exercised their leave to file their claims for restitution under California law as counterclaims to the Fund's action for restitution under § 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2). With the case in its present posture, the Court can consider the merits of the parties' cross-motions for summary judgment. Having carefully considered the written and oral arguments of the parties, the Court concludes that defendants are entitled to restitution of all contributions made to the Fund before January 1, 1975, in the innocent and mistaken belief that the employees on whose behalf they were made were eligible for benefits from the Fund and that defendants who made such contributions on or after January 1, 1975, are not entitled to any restitution.

The major substantive dispute between the parties concerns whether ERISA or California law determines defendants' right to restitution. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), states that except as provided in § 514(b), ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. Subsection (a) goes on to specify that "This section

shall take effect on January 1, 1975." Section 514(b)(1) explicitly provides that ERISA does not preempt "any cause of action which arose, or any act or omission which occurred, before January 1, 1975."[1]

As §§ 514(a), 514(b)(1), and 414(a), 29 U.S.C. § 1114(a) (effective date of fiduciary standards is January 1, 1975) make clear, Congress did not intend ERISA to apply retroactively to conduct which occurred before its effective date. *Morgan v. Laborers Pension Trust Fund,* 433 F.Supp. 518, 524 (N.D.Cal.1977); *Martin v. Bankers Trust Co.,* 417 F.Supp. 923, 925 (W.D.Va. 1976); see *Puget Sound Power & Light Co. v. FPC,* 557 F.2d 1311, 1314 (9 Cir. 1977) (no retrospective application unless Congress had that "manifest intention"). The basic issue in this case is whether the conduct which is the basis of plaintiffs' alleged liability to defendants occurred before or after that date. Section 514(b)(1) preserves state law in two situations, when the cause of action arose before January 1, 1975, and when the act or omission occurred before January 1, 1975.

There is some uncertainty under California law about when a cause of action for restitution for mistake accrues. The time of accrual is "the moment when the party owning [a cause of action] is entitled to begin and prosecute an action thereon." *Van Hook v. Southern California Waiters Alliance,* 158 Cal.App.2d 556, 565, 323 P.2d 212, 217 (1958); *Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 230, 449 P.2d 161, 166 (1969). In the case of restitution for mistake, either the cause of action accrues when the payor discovers the mistake, see Cal.Civ.Code § 1691 (rescission based on mistake); Cal.Civ.Proc.Code § 338(4) (claim for restitution based on mistake accrues when mistake discovered), or it accrues after the payee refuses to make restitution or fails to respond within a reasonable time to

---

1. Section 514(a) and (b)(1) provides in full:

   "(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title

   and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

   "(b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975."

the payor's demand for restitution. *Mitchell v. California-Pacific Title Insurance Co.,* 79 Cal.App. 45, 52–53, 248 P. 1035 (1926); Comment, 15 Cal.L.Rev. 64, 64–65 (1926); see Cal.Civ.Code § 1713. The issue is in essence whether California law requires the payor to try to obtain voluntary restitution from the payee before instituting suit.

The Court need not decide whether defendants' cause of action for restitution under California law arose before January 1, 1975, because defendants' mistaken contributions to the Fund were "act[s] * * * which occurred, before January 1, 1975" within the meaning of § 514(b)(1). The Court assumes for the purposes of this opinion that refusal to make restitution or failure to do so within a reasonable time after the payor's demand is an element of a cause of action for restitution and that defendants' cause of action therefore accrued in March, 1975, when plaintiffs refused to make as complete restitution as defendants demanded.[2]

■ This lawsuit presents an example of the general case where the course of conduct on which a benefit plan's potential liability is based straddles the effective date of ERISA. Plaintiffs' refusal here to make complete voluntary restitution, an assumed element of a cause of action for restitution based on mistake, occurred after January 1, 1975, although all the other elements of defendants' state claim were complete before that date. The fact that some of the relevant acts in this lawsuit occurred before January 1, 1975, does not necessarily mean that state law controls; if the occurrence before January 1, 1975, of any act or omission relevant to a cause of action, even if it constituted an element of a multi-element cause of action, made state law controlling, the clause of § 514(b)(1) concerning the accrual of a cause of action would be superfluous. Although it is not at all clear what acts and omissions Congress referred to in § 514(b)(1), that clause was apparently intended to permit courts to apply state law,

even if the cause of action accrued after January 1, 1975, in cases where that result most fairly accommodates the interests of all affected parties—the beneficiaries, participants, and fiduciaries of and contributors to ERISA trusts. Courts must try to phase ERISA in as rapidly as possible without judging the conduct of affected persons by standards different from those which applied when they acted.

■ The Court concludes that the payment of money by mistake of law is an act within the meaning of § 514(b)(1) because three factors coalesce. . Those factors are (1) that the subsequent acts in satisfaction of the prior demand rule which permit the institution of suit for restitution amount to an exhaustion of internal remedies, (2) that an alternative construction would impose severe hardships on the contributors, and (3) that the Court's construction does not significantly undermine the purposes of ERISA.

First, the rule that the mistaken payor must make a demand on the payee for restitution and wait a reasonable time for response before instituting suit in effect constitutes a requirement of exhaustion of private remedies to give the parties an opportunity to settle their dispute without judicial intervention. The exhaustion requirement is not designed to affect the substantive rule of liability. The state of mind which § 1578 of the California Civil Code defines as a mistake of law exists at the time the payment whose restitution the payor seeks is made, which in defendants' case happened before January 1, 1975. The problem concerning the applicable law arose in this case only because the period during which the trustees had the employers' claims under submission included the effective date of ERISA. It would be anomalous if the trustees were required to apply pre-ERISA standards to claims submitted and decided before January 1, 1975, and if the applicable standards then changed overnight for claims under submission even

---

**2.** Defendants make no claim that plaintiffs could have processed the refund applications faster than they did.

though the conduct to which those new standards were applied was unchanged and completed. Although technically the cause of action may not accrue until the private remedies are exhausted, compliance with the exhaustion requirement should not affect the substantive liability. The purpose of § 514(b)(1) is to ensure that the conduct of trustees, beneficiaries, and contributors is judged by the standards existing at the time of the conduct, and that purpose is furthered by applying state law to acts occurring before January 1, 1975, if the additional acts necessary to complete a cause of action under state law must be performed in order to satisfy a requirement of exhaustion of private remedies.

Second, the Court's construction of § 514(b)(1) avoids a serious hardship for individuals who make payments to pension funds by mistake of law before January 1, 1975, but who cannot sue for restitution until after that date.

■ Section 403(c) prohibits fiduciaries of benefit plans from making restitution of contributions paid by mistake of law after the effective date of ERISA. The inclusion of restitution for mistake of fact among the exceptions to the general rule of § 403(c)(1) prohibiting payment of trust funds to employers implies that restitution to employers would otherwise be prohibited. Under the principle of construction "expressio unius est exclusio alterius," the failure to provide for restitution for mistake of law indicates that Congress intended to ban restitution for that reason. *Cf. National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1975) (presumption that explicit creation of certain causes of action precludes inference of others rebuttable only by "clear contrary evidence of legislative intent"). There is nothing in the legislative history of ERISA to contradict that inference. Indeed, the only example of mistakes permitting restitution included in the legislative history—arithmetical errors in calculating contributions, H.Conf. Rep. No. 93–1280, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News pp. 5038,

5083—also suggests a narrow exception excluding restitution for mistake of law. Finally, the law has traditionally been more reluctant to permit restitution for legal than for factual mistakes, *see, e. g., Grand Trunk Western R. Co. v. Chicago & Western Indiana R. Co.,* 131 F.2d 215, 217 & n.3 (7 Cir. 1942); *Olympic S.S. Co. v. United States,* 165 F.Supp. 627, 629–631 (D.Wash. 1958), and a congressional decision to prohibit restitution based on mistake of law is consistent with this attitude.

■ Defendants argue that Congress could not have intended to prohibit restitution based on mistake of law, a result which they contend is unfair, out of step with current legal developments, and unnecessary to carry out the purposes of § 403(c). It is unquestionably true that this interpretation of § 403(c) places a heavy burden on employers to make sure that employees are eligible for benefits before they make contributions to benefit plans on their behalf. It nevertheless seems clear that Congress intended this harsh rule, and only Congress can change it.

■ By prohibiting restitution of money paid by mistake of law, § 403(c) terminates the right under California law to restitution under those circumstances. *See* Cal.Civ.Code §§ 1689(b)(1) and 1692. When a legislature eliminates the remedy for the violation of a right and thereby eliminates the right itself, it must give the possessors of that right a reasonable opportunity to exercise it before they lose it. *Central Missouri Telephone Co. v. Conwell,* 170 F.2d 641, 648 (8 Cir. 1948); *Rosefield Packing Co. v. Superior Court,* 4 Cal.2d 120, 47 P.2d 716, 717 (1935); *Olivas v. Weiner,* 127 Cal. App.2d 597, 274 P.2d 476, 478 (1954). Before the enactment of ERISA on September 2, 1974, employers who made contributions to the Fund under mistake of law and who had not yet realized their mistake had a right to restitution (contingent on demand to the Fund) and faced a three-year statute of limitations which had not yet begun to run and would not start to run until after they discovered their mistake. Sections 414(a) and 514(b)(1), which made the effec-

tive date of § 403(c)(2)(A) fall not quite four months after the date of its enactment, gave employers 120 days to investigate all previous contributions to the Fund, to determine whether a mistake of law had been made in any of them, to notify the Fund, and to leave the Fund a reasonable period of time to answer the request (which could itself last, as in this case, more than three months). To accomplish those tasks within 120 days is a difficult if not impossible task.[3]

The Court emphasizes that its analysis of the hardship on employers does not involve any question of the constitutional validity of a retroactive change in a substantive right to restitution. The Court therefore need not consider abstruse questions relevant to the constitutional issue, such as whether an employer's right to restitution is "vested" at the time of the mistaken payment or only when the cause of action accrues. See generally 2 Sutherland, Statutory Construction § 41.06 (Sands ed. 1973). Even if the unfairness to employers of barring causes of action for restitution based on mistakes of law made before January 1, 1975, is not severe enough to make § 514(b)(1) unconstitutional, it is severe enough to require the Court to adopt an alternative construction of which § 514(b)(1) is reasonably susceptible and which avoids serious constitutional questions.

The third factor that supports the Court's construction of § 514(b)(1) is that it does not undercut the purposes of ERISA. The reason why § 403(c)(2)(A) prohibits restitution based on mistake of law is to encourage employers to determine the eligibility of the individuals on whose behalf the contribution is made *before* the payment to the Fund is made. That purpose could no longer be served concerning payments already made before the effective date of § 403(c)(2)(A). ERISA's intent to guarantee the financial soundness of pension plans would also not be significantly impaired. Although restitution would diminish the assets of the Fund, it would also reduce the number of beneficiaries, and the contributions on behalf of eligible employees should be adequate to provide for the payments of their benefits.

■ For these reasons, the Court concludes that ERISA does not govern an employer's right to restitution for payments made to the Fund before January 1, 1975, by mistake of law. Because the parties agree that no federal law other than ERISA, including §§ 301(a) and 302(c)(5) of the Labor Management Relations Act of 1947, 29 U.S.C. §§ 185(a) and 186(c)(5), define the trustees' duties under these circumstances, the right to restitution of defendants and members of the defendant class who made contributions to the Fund by mistake of law before January 1, 1975, is governed by California law.

Some members of the defendant class apparently made their mistaken payments

---

**3.** The result would be the same if § 403(c)(2)(A) is interpreted, as defendants propose, only to change the statute of limitations for actions for restitution based on mistakes of law. Under that interpretation, § 403(c)(2)(A) alters the previous statute of limitations in two significant ways: it shortens the period from three years to one, and it makes the period run from the date of payment instead of the date of discovery. Compare § 403(c)(2)(A) with Cal. Civ.Proc.Code § 338(4). As a result of this change and given the 120-day grace period between the date of enactment and the effective date of ERISA, any employer who made a mistaken contribution to the Fund before January 1, 1974, would be faced with a one-year statute of limitations two thirds of which in effect had run instead of a three-year statute which had not yet begun to run, and the employer would

have to investigate all his previous contributions and make a demand on the Fund all within the 120-day period.

A new and reduced statute of limitations can be constitutionally applied to accrued causes of action provided it gives affected parties a reasonable time to avail themselves of the remedy before the statute takes effect. *Central Missouri Telephone Co. v. Conwell, supra,* 170 F.2d at 648; *Rosefield Packing Co. v. Superior Court, supra,* 47 P.2d at 717; *Olivas v. Weiner, supra,* 274 P.2d at 478. Although an employer's cause of action in this case had technically not accrued before the effective date of the reduction of the period of limitation, the same principles apply here, and the time allowed employers to assert their cause is at most marginally reasonable.

to the Fund after January 1, 1975. Their claim to restitution is governed by ERISA since their state cause of action did not accrue until after January 1, 1975, and since their payments were made after that date. ERISA's prohibition of the return of contributions to employers who paid by mistake of law, see p. 1193, *supra*, requires the Court to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) the claims of these employers for failure to state a claim upon which relief may be granted.

Pursuant to the understanding reached in open court, the parties are directed to prepare an appropriate decree in accordance with the decision reached herein and submit it to the Court for execution within sixty (60) days of the date of this opinion.